819 A.2d 486 (2003)
359 N.J. Super. 222
STATE of New Jersey, Plaintiff-Respondent,
v.
Elba L. LOPEZ, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Ramon Garcia, Defendant-Appellant.
Nos. A-6503-00T4, A-2512-01T4.[1]
Superior Court of New Jersey, Appellate Division.
Submitted February 5, 2003.
Decided April 8, 2003.
*488 Yvonne Smith Segars, Public Defender, attorney for appellant Ramon Garcia, (Gilbert G. Miller, Designated Counsel, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, attorney for appellant Elba L. Lopez (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Bruce J. Kaplan, Middlesex County Prosecutor, attorney for respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the briefs).
Before Judges KING, LISA and FUENTES.
*487 The opinion of the court was delivered by FUENTES, J.A.D.
A Middlesex County grand jury returned an indictment against defendants Ramon Garcia and Elba Lopez charging them under count one with third degree possession of cocaine, N.J.S.A. 2C:35-10a(1), under count two with third degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1); N.J.S.A. 2C:35-5b(3), under count three with third degree possession of cocaine with intent to distribute within one thousand feet of a school N.J.S.A. 2C:35-5a, N.J.S.A. 2C:35-7, under count four with fourth degree possession with intent to distribute marijuana N.J.S.A. 2C:35-5a(1); N.J.S.A. 2C:35-5b(12), under count five with third degree possession of marijuana with intent to distribute within one thousand feet of a school, N.J.S.A. 2C:35-5a, N.J.S.A. 2C:35-7, under count six with operating a narcotics resort, N.J.S.A. 24:21a(6)[2], under count seven with fourth degree illegal use of a paging device, N.J.S.A. 2C:33-20, and under count eight with possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3.
At the start of trial, the State dismissed counts seven and eight. The jury found defendants guilty on counts one through six. At sentencing, the court merged counts one and two with count three, and sentenced each defendant to a term of imprisonment of five years with three years to be served without parole eligibility. The court also merged counts four and six with count five, and sentenced each defendant to a concurrent term of three years imprisonment with one year of parole ineligibility. The mandatory fines and penalties were also imposed.
Defendant Garcia raises the following arguments on appeal:
POINT I
THE STATE FAILED TO ESTABLISH A FOUNDATION FOR THE ADMISSION AT TRIAL OF THE TRASH FILLED BAG AND SEVERED SANDWICH BAG TOP IDENTIFIED *489 BY DETECTIVE TIEDGEN (Not Raised Below)
POINT II
[T]HE STATE FAILED TO ABIDE BY THE RULES OF DISCOVERY CONCERNING THE TRASH FILLED BAG AND SEVERED BAGGIE TOP IDENTIFIED BY DETECTIVE TIEDGEN (Not Raised [] Below)
POINT III
SEVERAL INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED DEFENDANT OF A FAIR TRIAL (Partially Raised Below)
POINT IV
THE STATE TWICE ADDUCED EXPERT TESTIMONY FROM WITNESSES WHO WERE NOT QUALIFIED AS EXPERTS
(Not Raised Below)
POINT V
DEFENDANT WAS ENTITLED TO A JUDGMENT OF ACQUITTAL, AND HIS CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE (Not Raised Below)
POINT IV
DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE
Defendant Lopez incorporates by reference all of Garcia's arguments and raises two additional points.
POINT I
THE DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
A. THE CO-DEFENDANT'S STATEMENT (MADE AFTER LOPEZ'S TRIAL)IS AN ADMISSIBLE DECLARATION AGAINST INTEREST THAT EXONERATES THE CO-DEFENDANT AND IMPLICATES THE DEFENDANT (Not Raised Below)
B. THE CO-DEFENDANT MAY BE COMPELLED TO TESTIFY AT A SEVERED TRIAL
POINT II
A. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S INSTRUCTION THAT ERRONEOUSLY PERMITTED THE JURORS TO CONVICT THE DEFENDANT OF POSSESSION WITH THE INTENT TO DISTRIBUTE SOLELY ON THE BASIS OF JOINT POSSESSION (Not Raised Below)
B. THE PROSECUTOR ERRONEOUSLY PROCEEDED ON THE THEORY THAT JOINT POSSESSION IS TANTAMOUNT TO AN INTENT TO DISTRIBUTE (Not Raised Below)
We conclude that, as a matter of law, the sharing of drugs by individuals in joint possession of the drugs, does not constitute "intent to distribute" within the meaning of N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7. The prosecutor's assertion to the jury that a finding of "intent to distribute" could be based on evidence of drug sharing between the two defendants in joint possession of the drugs was a material misstatement of law. In the context of the evidence presented here, the trial court's failure to correct this material misstatement of law amounted to plain error, R. 2:10-2, requiring reversal of defendants' convictions.

I
On January 7, 2000 at approximately 7:10 p.m., nine officers from the Perth *490 Amboy Police Department executed a "no knock" search warrant[3] on the defendants' residence. Upon entry, Lopez was in the master bedroom and Garcia was in the living room watching television. The officers immediately searched defendants, but did not find any contraband on their person. The police then conducted a systematic search of the apartment.
In the living room, the police found a green pager and the remnants of three hand-rolled marijuana cigarettes in a silver ashtray. In Lopez' bedroom, Detective William Tiedgen found and recovered rolling papers, a 4" × 1" tied-off sandwich bag containing a few grams of loose marijuana and a marijuana cigarette; a tissue-wrapped package of six small, 3/4" × 3/4" Zip-Loc bags in a drawer of a nightstand; a bottle of lactose, described as a white crystalline substance used as "a cutting agent for cocaine;" a pager; and a large Zip-Loc bag containing approximately fifty to sixty 2½ × 1½ Zip-Loc bags allegedly used for packaging cocaine. Also found in the bedroom were three walkie-talkies, $20 in a purse and $90 in a shoe in the closet.
In the kitchen, detectives discovered a box of Glad sandwich bags; a box of Good Sense sandwich bags; two orange strainers; a "key-chain" size pipe commonly used to smoke marijuana. After the kitchen was searched, Detective Peter Simon noticed loose molding above the cabinets. A search of the area between the wall and molding revealed a plastic bag with four tied-off glassine bags inside containing small amounts of cocaine. In total, the police seized 7.37 grams of marijuana and.41 grams of cocaine.
At trial, Detective Conway, without being first qualified as an expert witness and without objection from defense counsel, testified that the orange strainers recovered are typically used by drug dealers to sift cocaine. Detective Tiedgen testified, also as a lay witness and without objection, that a cut-off top of one of the sandwich bags discovered in the kitchen was consistent with techniques used by drug dealers to prepare packets of drugs for sale. According to Tiedgen, the dealer places the drugs in the bottom corner of the bag and closes the bag by tying together the cut-off ends. Tiedgen identified Exhibit S-16 as a large trash bag containing fifty sandwich bags with severed top corners and four marijuana roaches.
Tiedgen further testified that he was the officer responsible for preparing an inventory sheet listing all items seized during the search. The severed top in the Good Sense box was not listed on the inventory sheet. The trash bag and its contents were also not listed on the inventory sheet, on the search warrant return, or on any police report. Teidgen did not recall which detective discovered S-16.
Investigator Daniel Muntone of the Middlesex County Prosecutor's Office testified on behalf of the State as an expert in the manufacturing, packaging and distribution of narcotics. Muntone opined that the loose marijuana discovered in the nightstand and the three partially smoked marijuana cigarettes in the ash tray were possessed for the defendants' personal use. He also concluded that the 3/4" × 3/4" Zip-Loc bags filled with marijuana found in a nightstand in Lopez' bedroom were possessed with the intent to distribute. Furthermore, although the aggregate amount of cocaine found in the four bags concealed behind the molding, (.41 grams) *491 was consistent with personal use, when considered in the context of the circumstances of this case, i.e., location of the hiding place, presence of lactose as a cutting agent, strainers which could be used for sifting drugs, sandwich bags commonly used to package drugs, walkie-talkies and pagers, the cocaine was possessed with the intent to distribute.
Lopez testified on her own behalf. Garcia did not. Lopez testified that she and Garcia were only friends. He was not her boyfriend, husband, or father to her son. She had been smoking marijuana for nine years to help her cope with depression resulting from the death of her father.
Lopez testified that the marijuana discovered in her bedroom and the three partially smoked cigarettes in the ashtray in the living room were hers. She claimed she purchased the six small packets of marijuana discovered in her nightstand on a visit to New York because her Perth Amboy dealer had temporarily run out of marijuana to sell. She said she bought the small packets because the New York City dealer was not selling larger, packaged quantities of marijuana. She claimed that Garcia did not know that she used marijuana because she concealed the smell with an air freshener spray. On the evening in question, she testified that she smoked the three marijuana cigarettes that were found in the ashtray before Garcia came home, and that Garcia was only in the apartment 15 minutes before the police arrived.
As to the sandwich bags discovered in the kitchen, she said she used them to store food. She used the strainers to sift flour and skim the surface of heated milk. She also claimed that the walkie-talkies were owned by her son who used them to play with his friends. She testified that the walkie-talkies were recovered from her son's room. She also said that the pagers and key-chain size pipe in the kitchen were not hers. Finally, she denied any knowledge as to the cocaine and the lactose found in the kitchen or the larger trash bag containing the fifty severed top corners of sandwich bags and the four marijuana roaches. She admitted having seen the pagers in the house, but denied ownership of them.

II
With respect to the partially smoked marijuana cigarettes found in an ashtray in the living room next to where Garcia had been sitting, the prosecutor made the following summation comments to the jury:
So what about these three joints? I got them right here. You take a look at them. They're not teeny, tiny roaches. They're maybe a third of the size of the unlit joint. She [Lopez] didn't smoke these, put one down, smoke it, put it down. She even said she's got a roach clip. You could smoke it to the very end. No. Other people smoke this with her. And one of those other people was probably Ramon Garcia. They both smoked it in the living room. And he had to have known it was there.

And, in fact, the sharing of this marijuana by the two of them is possession with the intent to distribute. There doesn't have to be an exchange of money for there to be distribution. (Emphasis added.)
No objection was made as to these remarks.
As part of its charge to the jury as to N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7, the court instructed the jury that the legal concept of "possession" included actual, constructive and joint possession. With respect to the element of "intent to distribute," the court gave the following instructions:

*492 Now, in regard to this additional element, please understand that ["]distribute["] simply means to transfer a controlled dangerous substance from one person to another.
....
Thus, in this count the State must prove beyond a reasonable doubt that Ramon Garcia and Elba Lopez intended to distribute, that is, to transfer or deliver the cocaine in his or her possession and control to someone else.
It is not necessary for the State to prove that the cocaine was actually transferred or sold in exchange for payment or promise of payment of money or anything of value. The State need only prove that at the time a defendant possessed the cocaine, he or she intended to distribute it to another person at some point in the future.
Later in the charge, the court added the following comment:
The intention may be gathered from a person's actions, conduct, and from all the person said and did at a particular time and place and from all of the surrounding circumstances.
In this case you may consider any evidence as to the quantity, the packaging of cocaine and marijuana, the manner in which it was possessed, the amount of cash and the alleged drug paraphernalia that was seized together with all other evidence in the case to aid you in your determination of intent to distribute.

III
Defendants argue that the prosecutor improperly asserted to the jury that the sharing of the marijuana by the two defendants charged with joint possession was sufficient to constitute "possession with intent to distribute" within the meaning of N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7. We are satisfied that this assertion by the prosecutor was legally incorrect. We are also convinced that the prosecutor's misstatement of law, when considered in the context of the evidence presented here, was clearly capable of producing an unjust result. State v. Jordan, 147 N.J. 409, 420, 688 A.2d 97 (1997); R. 2:10-2. The absence of a curative instruction compounded the problem and increased the likelihood that the jury reached a legally unsupportable verdict. State v. Schmidt, 110 N.J. 258, 261, 540 A.2d 1256 (1988).
The prosecution's theory of culpability as to the element of "possession" was based on joint possession by both defendants of the marijuana and the cocaine. In its charge to the jury, the court gave the following definition of "joint possession:"
And the law also recognizes that possession may be sole or joint. If one person alone has actual or constructive possession, possession is sole. If two or more persons share actual or constructive possession of a thing, then possession is said to be joint.
When referring to the elements needed to prove an offense under N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7, the prosecutor advised the jury that sharing of the marijuana between the two defendants constituted "intent to distribute."
The legal concept of "joint possession" is premised upon a metaphysical event in which two or more persons simultaneously possess an entire object, without leaving any piece of it outside the joint possessors' control. A corollary of this proposition is that one cannot acquire something one already possesses. Having an object with the intent to distribute presumes that the intended recipient does not have possession of it. Therefore, as a matter of law, two or more defendants *493 cannot intend to distribute to each other drugs they jointly possess. Stated differently, the element of "intent to distribute" under either N.J.S.A. 2C:35-5 or N.J.S.A. 2C:35-7 cannot be established on the basis of the sharing of drugs between or among joint possessors.
The Second Circuit Court of Appeals reached a similar conclusion in United States v. Swiderski, 548 F.2d 445 (2d Cir. 1977). In Swiderski, defendants, an engaged couple, jointly purchased 21.5 grams of a substance containing 4.1 grams of cocaine. Before consummating the sale, they each sampled or "snorted" some of the cocaine and tested the remainder for purity. Swiderski paid the dealer $1,250, placed the package of cocaine in his pants pocket and left accompanied by his co-defendant fiancee.
At trial, the Assistant United States Attorney argued that even if the defendants purchased the cocaine with a view of sharing it between themselves as users, this proof would be sufficient to establish possession "with intent to distribute" within the meaning of 21 U.S.C.A. 841(a).[4] The trial judge instructed the jury on the legal concepts of actual and constructive possession. With respect to the element of "intent to distribute," the judge emphasized that "[i]t could mean a sale; it could mean that you could give it away. You could give it to a friend of yours or even to your fiancee. If you are going to do that, that is a distribution." Id. at 449. Defendants were both convicted of possession of cocaine with intent to distribute.
The Court reversed defendants' convictions for possession of cocaine with intent to distribute holding that:
[W]here two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. For purposes of the Act they must therefore be treated as possessors for personal use rather than for further distribution. Their simple joint possession does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a "continuing criminal enterprise" or in drug distribution.
[Swiderski, 548 F.2d at 450]
The reasoning in Swiderski has been followed by the Supreme Court of California, People v. Edwards, 39 Cal.3d 107, 216 Cal.Rptr. 397, 702 P.2d 555 (1985) and the Supreme Court of Minnesota, State v. Carithers, 490 N.W.2d 620 (Minn.1992).[5] Although other jurisdictions have distinguished the holding in Swiderski based on the particular factual circumstances of the case, none have repudiated its fundamental *494 premise. See United States v. Layne, 192 F.3d 556, 569 (6th Cir.1999), cert. denied sub nom., Layne v. United States, 529 U.S. 1029, 120 S.Ct. 1443, 146 L. Ed.2d 330 (2000), (citing Swiderski to support legal conclusion that conspiracy among three individual to purchase crack-cocaine amounted to a violation of 21 U.S.C.A. § 844(a), which criminalizes simple possession); State v. Moore, 529 N.W.2d 264, 266 (Iowa 1995), (Supreme Court of Iowa declined to extend Swiderski where both defendants did not actively and equally participate in acquiring the drugs); United States v. Cabbell, 35 F.3d 1255, 1258 (8th Cir.1994) (accepting the propriety of a jury charge pursuant to Swiderski); United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994) (finding Swiderski inapplicable where one defendant purchased cocaine with intention of sharing it with friends); United States v. Speer, 30 F.3d 605, 609 (5th Cir.1994), (finding Swiderski inapplicable where only two out of the three defendants acquired the drugs at the same time); United States v. Wright, 593 F.2d 105, 108 (9th Cir.1979) (finding Swiderski inapplicable because defendants had not acquired the drugs at the same time).
We now apply the Swiderski principle to the facts of this case. The evidence presented at trial, at best, paints an equivocal picture. Strainers, cut-off sandwich bags, lactose, a small amount of cocaine hidden behind wall molding in the kitchen, a larger quantity of marijuana stored in a nightstand drawer, pagers and walkie-talkies, all support the notion that defendants were engaged in drug distribution. However, the small of amounts of drugs found in the apartment together with rolling papers and a key-chain size pipe, are also evidence of defendants' personal drug consumption. Under the legal principle articulated in Swiderski, these competing characterizations of the evidence are sufficient to create a reasonable doubt in the minds of a rational jury as to the element of "intent to distribute" with respect to the charges relating to N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7.
In her testimony, Lopez admitted to smoking marijuana and alleged that the "stash" found in her bedroom was for her personal use. She also asserted that Garcia was unaware of the existence of the drugs or of her drug problem. In an attempt to both impeach Lopez' credibility and inculpate Garcia, the State emphasized that three partially smoked marijuana cigarettes were found in an ashtray next to where Garcia was sitting when the police broke into the apartment. Based on this evidence alone, the jury could have inferred that Garcia and Lopez shared the marijuana kept in the apartment, thus satisfying the element of "intent to distribute" under N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7. Such a prospect renders the verdict unreliable as a matter of law.

IV
We now turn our focus to defendants' arguments concerning other aspects of the prosecutor's summation. We do so in the interest of providing some guidance as to how we expect defendants' new trial to be conducted.
Defendants assert four specific instances of alleged misconduct occurring in the course of the prosecutor's summation:
(1) the prosecutor intentionally and without evidential support mis-characterized defendants' relationship; (2) the prosecutor improperly commented on Garcia's attire; (3) the prosecutor improperly implied that defendants had the burden to rebut the State's explanation for the use of the Lactose found in the apartment; (4) the prosecutor improperly interposed her own personal views as to what a woman should know *495 about the contents of her "toiletry drawer." Defendants argue that these improprieties and innuendos, when viewed together, had the capacity of depriving defendants of a fair trial. We disagree.
In the course of her summation, the prosecutor made the following comments as to Lopez's testimony regarding her relationship with Garcia:
Elba Lopez sat right here and she lied to you. She lied to you repeatedly about some things she didn't even need to lie about. And you know why she lied? To save herself. To save herself from conviction and to save Ramon Garcia from conviction. Because he is not her friend, he's her lover. And not only that, he may be more than her lover.
How many of you got a chance to sit here and look at her and notice her left hand? You know what she was wearing? An engagement ring. How many of you got a chance to look at Mr. Garcia and notice what he's wearing on his left hand? A wedding band.
Sure, some people wear rings like that for other reasons. But something that's [sic] not right about that. My point being these two people are romantically involved. These two people share the same bed. These people [sic] two people share the same room, the same apartment, the same lives for six years. And she lied to you about that.
....
It's quite obvious these two people are lovers. They're husband and wife, lived in this apartment for a long time. People page them, they may use walkie talkies maybe she sits out on the front porch with the walkie talkie saying I see so and so coming or watching out for cops. Because those weren't found in the son's bedroom. Those were found in the back bedroom. They had a regular narcotics resort, the sixth count for which you're presented. They were selling pot and they were selling drugs from inside their apartment.
Look at Mr. Garcia. Very well dressed man. Certainly not dressed like you would expect a carpenter. Every day had a very nice suit. Very nicely dressed woman.
And you know what she did? She came in here today and she lied to you. She was a dutiful wife. She makes the beds, she does the laundry, she cooks.
At this point, counsel for Lopez objected to the prosecutor's characterization of the parties as "husband and wife." The judge gave an immediate curative instruction directing the jury to "disregard the statements relating to the defendants being husband and wife. There is no evidence in this case with respect to that relationship." At the conclusion of the summation, counsel for both defendants renewed their objections and requested that the court again instruct the jury to disregard the references to wedding bands and engagement rings. The trial judge agreed, finding that "[T]here was nothing in the direct testimony of this case and really nothing in [the prosecutor's] cross-examination which would in any way shed any light or lead anyone to conclude that the defendants were married or engaged." The court again instructed the jury "to disregard the prosecutor's remarks regarding the possibility that the defendants were either husband and wife or engaged to one another." No objections were raised as to the prosecutor's remarks concerning Garcia's attire at trial.
Referring to the lactose, the prosecutor indicated that defendants had not presented any evidence of a "legitimate use" for the substance. Referring to Lopez's testimony, the prosecutor made the following statements:

*496 She lied about the Lactose. How is she not going to know this is in her drawer? Take a look at this. You'll see it, you'll take it back there. How do you not know this old, dirty bottle is in your drawer of stuff? I challenge every woman. I know every single thing in my toiletry drawer. And if it's taking up too much room, it's going right in the garbage.
Defense counsel did not object.
Prosecutorial misconduct warrants reversal when it is so egregious that it operates to deprive a defendant of a fair trial. State v. Nelson, 173 N.J. 417, 463, 803 A.2d 1 (2002); State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987) cert. denied sub nom., Ramseur v. Beyer, 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993); State v. Allen, 337 N.J.Super. 259, 267, 766 A.2d 1168 (App.Div.2001), certif. denied, 171 N.J. 43, 791 A.2d 221 (2002). In order to determine whether the particular misconduct was sufficiently egregious to warrant reversal, we "must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks [be] stricken from the record and instructed the jury to disregard them." State v. Frost, 158 N.J. 76, 83, 727 A.2d 1 (1999).
In order to determine whether the prosecutor's comments were inappropriate, we must inquire whether the prosecutor's legal or factual assertions were accurate and whether the comments were confined to the evidence revealed during the trial and reasonable inferences to be drawn from that evidence. State v. Smith, 167 N.J. 158, 182, 770 A.2d 255 (2001). With these legal principles in mind, we will now examine each instance of alleged misconduct.
With respect to the remarks pertaining to the parties' relationship, defense counsel made timely objections which were immediately sustained by the trial court. The judge also issued appropriate and effective curative instructions, directing the jury to disregard the remarks and refocusing its attention to the evidence adduced during the trial.
The balance of the inappropriate comments were not objected to by trial counsel and are raised for the first time in this appeal. Therefore, we will infer that trial counsel did not consider the remarks prejudicial at the time they were made. State v. Frost, supra, 158 N.J. at 84, 727 A.2d 1. Counsel's failure to object also deprived the trial court the opportunity to take curative action. Ibid.
Despite the lack of objection from trial counsel, we are, nevertheless, troubled by the prosecutor's remarks. There is no question that the prosecutor's comment with respect to Garcia's attire and well-groomed appearance as being inconsistent with his professed status as a carpenter was improper. In the context of these charges, the unmistakable implication intended by such a statement was that this high-end appearance was more befitting the lifestyle of a drug-dealer than a carpenter.
Similarly, the comments suggesting that, as a woman, Lopez should have known the contents of her dresser drawer because, "I know every single thing in my toiletry drawer," were improper because it appealed to the jury based on stereotypic notions of gender behavior. It also improperly introduced the prosecutor's personal habits as a standard for assessing Lopez' credibility.
The prosecutor's remarks about the defense's failure to provide reasons unrelated to illicit drug distribution for *497 the bottle of lactose were also problematic. The statement improperly suggested that, once the State's proofs established a possible illegal use for the substance, the burden of proof shifted to defendants to provide a benign explanation for the substance.
Despite these concerns, we do not find that these lapses in judgment, even when considered together, to be so egregious as to have deprived defendants of their right to a fair trial. We do expect, however, that they will not be repeated in any future trial of this or any other case.

V
The balance of defendants' arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). The convictions on count two, possession of cocaine with intent to distribute; count three, possession of cocaine with intent to distribute within one thousand feet of a school; count four, possession with intent to distribute marijuana; count five, possession of marijuana with intent to distribute within one thousand feet of a school; and count six, operating a narcotics resort are reversed.
Defendants' conviction on count one, possession of cocaine is affirmed.
In light of our disposition, we do not address defendants' sentencing argument. In the event the State chooses to forgo retrial, it may request the trial court to "unmerge" and reinstate defendants' conviction of third degree possession of cocaine and sentence defendants on that count. State v. Pennington, 273 N.J.Super. 289, 295, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994).
Reversed in part, affirmed in part and remanded for a new trial.
NOTES
[1] These appeals calendered back-to-back are consolidated on the court's motion for purposes of opinion only.
[2] Sub-section (b) of this statute provides that: "Any person who violates this section shall be subject to a fine of not more than $25,000.00; provided, that if the violation is prosecuted by an accusation or indictment which alleges that the violation was committed knowingly or intentionally, and the trier of fact specifically finds that the violation was committed knowingly or intentionally, such person is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 3 years, or by a fine of not more than $25,000.00, or both."
[3] This type of warrant authorizes the police to enter the premises without first announcing themselves. Entry is usually achieved through the use of force. See State v. Johnson, 168 N.J. 608, 775 A.2d 1273 (2001). Here, the police used a battering ram to break down the entrance door of the apartment.
[4] This section of the Comprehensive Drug Abuse Prevention and Control Act of 1970 makes it unlawful to possess with intent to distribute a controlled substance such as cocaine. 21 U.S.C.A. 802(11) defines "distribute" as "delivery" or "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship."
[5] In fact, the Minnesota Supreme Court in Carithers extended the holding in Swiderski to insulate joint owners of drugs from a delivery or distribution charge where both owners did not actively and equally participate in the purchase. In so doing, the Court ruled that a person who went alone to buy heroin for herself and her husband and then later shared the heroin with her husband had not delivered or distributed drugs. We do not endorse or adopt this extension of Swiderski here.