944 A.2d 52 (2007)
399 N.J. Super. 268
The STATE of New Jersey
v.
Kenneth BECHEAM, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Essex County,
Decided August 3, 2007.
*53 H. Rutherford Livengood, Assistant Essex County Prosecutor, for the State.
Olubukula Adetula, for defendant.
KENNEDY, J.S.C.
The question raised by the defendant is whether the court may impose sentence on defendant's unreversed conviction for possession of a weapon for an unlawful purpose where that offense had been merged into a felony murder charge that was later reversed and retried, resulting in an acquittal. The court answers this question in the affirmative.
Indictment No. 00-09-2613 charged defendant with fourteen crimes, including murder, felony murder, first-degree robbery, and various weapons offenses. Defendant was found guilty following a jury trial in 2003 of first-degree robbery, contrary to N.J.S.A. 2C:15-1 (count two),[1] felony murder, contrary to N.J.S.A. 2C:11-3(a) (count four), unlawful possession of a weapon, an assault firearm, contrary to N.J.S.A. 2C:39-5(f) (count five), possession of a weapon, an assault firearm, for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count six), and unlawful possession of a handgun without a permit, contrary to N.J.S.A. 2C:39-5(b) (count seven).
On March 31, 2003, a judgment of conviction was entered against defendant based on the jury verdict. The trial court merged count two (first-degree robbery) and count six (possession of an assault firearm for an unlawful purpose) into count *54 four (felony murder) and sentenced defendant on counts four, five, and seven. Defendant thereafter appealed.
The facts presented at trial were summarized by the Appellate Division in its opinion of July 19, 2006:
We need not set forth in great detail the evidence that was presented during the trial. Suffice it to say the charges arose from the murder of Quadin Hawes on June 15, 2000. The State's theory was that on that day, defendant and another man, referred to as Youngin, conspired to kill Hawes for money he owed defendant. According to the State's primary witness, Lakesha Lewis, who was with the two at the time, two weapons were involved, the "handgun" and the "assault firearm" both referenced in the indictment. The evidence presented by the State placed the "handgun" in the hands of Youngin, [footnote omitted] and the "assault firearm" in the hands of the defendant. No forensic evidence tied the "assault firearm" to the shots that killed Hawes. Rather, it was undisputed that the "handgun" killed Hawes and, thus, Youngin was the killer.
In both his police statement and his trial testimony, defendant admitted to being with Lewis and Youngin that night, but denied having any participation in the shooting, or possession of a weapon. According to defendant, just prior to the shooting, he and Lewis, who was driving his girlfriend's car for him, had picked up Youngin, who was taking them to someone who owed Youngin money. Youngin directed Lewis where to go. When they arrived at their destination, defendant got out and went to a store on the corner to get himself some cigarettes and a soda for Lewis. Returning a few minutes later, he passed Youngin, who was standing near a phone booth talking to someone, and re-entered the car, Defendant then "heard a series of shots." He told Lewis to start the car and, as the car began driving off, Youngin jumped back in. Youngin kept repeating "I got him" and threw a gun onto the backseat of the floor of the car.
According to Lewis, however, after arriving at their destination which she claimed defendant directed her to, defendant exited the car and approached the victim. She heard defendant ask "[w]here is the money?" Youngin then got out of the car. Lewis heard gunshots. Defendant re-entered the car, and Lewis heard more shots, after which Youngin returned to the car. She contended defendant had a .9 mm gun (the "assault firearm") and Youngin had a .357 caliber, silver-handled gun (the "handgun").
Based upon Lewis' reporting of the events to the police, defendant was arrested on July 8, 2000. At the time, he was in possession of a .38 caliber Colt pistol with a magazine containing fifteen .9 mm ammunition cartridges inserted into the grip. It was considered to be a semi-automatic assault-type weapon and stipulated during trial as meeting the statutory definition of "assault firearm." It was this weapon that the State claimed defendant possessed at the time of the robbery on June 15, 2000.
During the course of the trial, the jury asked whether it could consider the "assault firearm" as the "deadly weapon" in connection with count two, despite the fact that the indictment identified the weapon as "a handgun." The trial court answered this inquiry in the affirmative.
On appeal, defendant challenged the admission of his prior convictions on credibility, the admission of evidence as to defendant's alleged use of narcotics on the date of the incident under N.J.R.E. 404(b), and *55 the trial court's instruction to the jury that it could consider the assault firearm as the deadly weapon in count two. Defendant: also asserted the verdicts on count two and, count four were against the weight of the evidence and that the sentence was "unconstitutional" and "excessive." Finally, defendant filed a pro se brief alleging various trial errors.
The Appellate Division held that the trial court's instruction to the jury that it could consider the assault firearm as the "deadly weapon" on count two was error, because the indictment itself only identified the weapon as a "handgun" and that the State should not have introduced evidence of defendant's cocaine use on the day of the incident, "[a]lthough [the admission of such evidence was] not enough for a reversal." No other claims of error were found to be meritorious.
The Appellate Division reversed defendant's convictions on counts two and four only and remanded these counts "for a new trial consistent with this opinion." The Appellate Division also explicitly stated that "our decision does not implicate the weapons convictions and the sentences imposed thereon."
Defendant was thereafter retried in May 2007 on the first-degree robbery and felony murder charges. Prior to the commencement of trial, the court and counsel addressed the fact that the only convictions reversed by the Appellate Division were first-degree robbery and felony murder and that these were the only charges to be retried. In the event of a conviction, counsel would address the merger issue as to the unreversed conviction on count six, possession of an unlawful weapon, an assault firearm, for an unlawful purpose. In the event of an acquittal, the court would be required to sentence on count six, because there would be no offense in which to merge that count.
Defendant now claims that he cannot be sentenced on count six, possession of a weapon, an assault firearm, for an unlawful purpose, because that conviction had been earlier merged at sentencing into an offense on which defendant, following retrial, was later acquitted. Defendant also asserts that the verdicts are now inconsistent because the "unlawful purpose" identified in the first trial, robbery and/or murder, are offenses on which defendant was later acquitted.
Neither the State nor the defendant challenged the propriety of the Appellate Division's partial reversal of defendant's earlier conviction. Indeed, the selective reversal of only some counts in a criminal conviction is quite common when the allegations of trial error do not affect all the charges of which a defendant was convicted. See, e.g., State v. Lopez, 359 N.J.Super. 222, 819 A.2d 486 (App.Div.), certif. granted sub nom. State v. Garcia, 111 N.J. 576, 832 A.2d 326, appeal dismissed 178 N.J. 372, 840 A.2d 257 (2003); State v. Smith, 210 N.J.Super. 43, 509 A.2d 206 (App.Div.), certif. denied 105 N.J. 582, 523 A.2d 210 (1986); State v. Darby, 200 N.J.Super. 327, 491 A.2d 733 (App.Div. 1984), certif. denied 101 N.J. 226, 501 A.2d 905 (1985). In State v. Long, 119 N.J. 439, 504, 575 A.2d 435 (1990), the Supreme Court observed that "[g]enerally, when error relates only to separable issues, a judgment may be reversed in part, and in criminal cases counts may be selectively reversed." Here, the Appellate Division considered allegations of trial error which would have affected all the charges on which defendant was convicted but found reversible error only as to counts two (first-degree robbery) and four (felony murder). The Appellate Division ruled that "[t]he convictions on Counts II and IV are reversed and remanded for a new trial" and explicitly observed that "[o]f *56 course, our decision does not implicate the weapons convictions and the sentences imposed thereon."[2] Hence, defendant's conviction for possession of a weapon for an unlawful purpose remains unreversed, albeit merged into counts that were reversed and remanded and, later, upon retrial, were the subject of acquittal.
What is the effect of merger? "Convictions merged for the purpose of sentencing are not extinguished. The doctrine of merger as codified by N.J.S.A 2C:1-8(a), only serves to prevent `an accused [who] has committed . . . one offense [from being] punished as if for two.' State v. Cole, 120 N.J. 321, 325-26, 576 A.2d 864 (1990) (quoting State v. Miller, 108 N.J. 112, 116, 527 A.2d 1362 (1987))." State v. Pennington, 273 N.J.Super. 289, 295, 641 A.2d 1085 (App.Div.), certif. denied 137 N.J. 313, 645 A.2d 141 (1994).
Because merger does not extinguish the merged offense, it follows that if the conviction on the greater offense is reversed and defendant is not retried on that offense, the State may request the trial court to unmerge the prior conviction of defendant on the lesser offense and proceed to sentence thereon. State v. Lopez, supra 359 N.J.Super. 222, 240, 819 A.2d 486; State v. Pennington, supra 273 N.J.Super. at 295, 641 A.2d 1085. Does the same principle apply if the State does elect to retry defendant on the greater offense and the defendant is later acquitted of that offense? Logic would appear to dictate an affirmative answer to this question, subject to a few exceptions, where the grounds for reversal on the greater offense do not affect the conviction on the lesser offense.
In each instanceretrial and acquittal, or a decision not to retrydefendant remains unconvicted of the greater offense and thus there remains no greater offense available for merger. Hence, unless the retrial and acquittal of the greater offense gives rise to unfair prejudice to the defendant arising from "unmerger" of the lesser offense, or unless the acquittal creates a fatal inconsistency between the verdicts, there is no sound reason not to unmerge the conviction on the lesser offense and proceed to sentence.
In State v. Roldan, 314 N.J.Super. 173, 714 A.2d 351 (App.Div.1998), the Appellate Division considered a case somewhat analogous to that at bar. In that case, defendant was found guilty of conspiracy to commit the offenses of distribution of cocaine, possession of cocaine with the intent to distribute, and possession of cocaine. He was found guilty of the substantive offenses as well. At sentencing, the trial court merged the conspiracy into the substantive offenses.
The Appellate Division found that the State's evidence was sufficient to support defendant's conviction for conspiracy, but reversed defendant's convictions on the substantive charges and remanded them for retrial. Judge Skillman, writing for the court, concluded as follows:
Accordingly, defendant's convictions for possession of cocaine and possession of cocaine with the intent to distribute are reversed and the case is remanded to the trial court for a retrial of the possessory offenses limited to a theory of vicarious conspiratorial liability. Defendant's conviction for conspiracy is affirmed. Consequently, if defendant is acquitted of the possessory offenses at his retrial, the conspiracy conviction *57 would be unmerged, see State v. Pennington, 273 N.J.Super. 289, 295-96, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994), and the court should impose sentence for that conviction.
Similar considerations apply here.
The court perceives no unfairness to the defendant upon unmerging the offense of possession of a weapon for an unlawful purpose. The defendant was accorded a full and fair trial on that charge and the Appellate Division found none of defendant's claims of error as either meritorious or fatally tainting the conviction on that charge. The trial court's instructions to the jury on that offense appear complete and accurate and the jury's determination was amply supported by the evidence presented at trial.
The court will now examine defendant's claim that his acquittal on the felony murder and armed robbery charges creates a fatal inconsistency with the verdict on the unlawful purpose charge.
The United States Supreme Court addressed the matter of inconsistent verdicts in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). There, the defendant was convicted of maintaining a nuisance for the sale of alcoholic beverages but acquitted of the unlawful possession and sale of alcoholic beverage charges. Dunn, 284 U.S. at 391-392, 52 S.Ct. at 190, 76 L.Ed. at 358. The Court held that consistency in a verdict is unnecessary, and each count in an indictment is regarded as if it were a separate indictment. If criminal charges are separately tried, an acquittal on one cannot be pleaded as res judicata of another; thus, when indictments are charged together the same rule must hold. Id. at 393, 52 S.Ct. at 190, 76 L.Ed. at 358-359.
In United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court reaffirmed the principle that inconsistent verdicts are acceptable. There, the defendant was convicted of using a telephone to commit and facilitate conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, but was acquitted of the conspiracy and possession charges themselves. Powell, supra, 469 U.S. at 60, 105 S.Ct. at 476, 83 L.Ed.2d at 465. The Court held that inconsistent verdicts, even where defendant is acquitted on a predicate offense but convicted on the compound offense, should not be interpreted as a windfall for the government at the defendant's expense; it is just as possible the jury was convinced of defendant's guilt, and mistakenly benefited the defendant. Id. at 65, 105 S.Ct. at 476, 83 L.Ed.2d at 468.
The Dunn/Powell rule controls inconsistent verdicts in New Jersey when the reason for the inconsistency cannot be determined. State v. Grey, 147 N.J. 4, 11, 685 A.2d 923 (1996). The courts permit inconsistent verdicts to be returned by a jury because it is beyond their power to prevent them. State v. Banko, 182 N.J. 44, 54-55, 861 A.2d 110 (2004). The courts do not speculate why a jury acquits. They accept inconsistent verdictsand not only when the jury's action benefits a defendant. Such verdicts are permitted normally provided the evidence was sufficient to establish guilt on the substantive offense beyond a reasonable doubt. Id. at 54-55, 861 A.2d 110. The court, therefore, must accept a guilty verdict if there is sufficient evidence to establish guilt on that charge beyond a reasonable doubt. See State v. Lopez, 187 N.J. 91, 102, 900 A.2d 779 (2006).
In its opinion in State v. Muhammad 182 N.J. 551, 578, 868 A.2d 302 (2005), the Supreme Court clearly illustrates the procedure *58 the court must undertake to determine whether the verdict may stand:
Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . . [W]e determine whether the evidence in the record was sufficient to support a conviction on any count on which the jury found the defendant guilty.
Defendant Becheam was tried and convicted by a jury of possession of an assault firearm for an unlawful purpose. The court is satisfied that the jury had sufficient evidence before it to sustain such a charge, and the fact that defendant was later acquitted of robbery and felony murder does not warrant a different result. As the Appellate Division observed it was undisputed at the first trial that defendant's companion, "Youngin was the killer." Further, Youngin was going to see the victim for money. The jury here obviously concluded that the defendant, Youngin's companion, possessed his weapon with the purpose to use it unlawfully to commit a robbery and murder. The fact that defendant failed to achieve his objective, as evidenced by the acquittal on robbery and felony murder charges, is thus without significance. State v. Banko, supra, 182 N.J. at 58, 861 A.2d 110; State v. Petties, 139 N.J. 310, 314-521, 654 A.2d 979 (1995).
Finally, defendant asserts that this court is without jurisdiction to unmerge count six and impose sentence because the Appellate Division only reversed and remanded counts two and four. However, the Appellate Division did not retain jurisdiction. While it is true that whether or not an appellate court retains jurisdiction, its remand instructions bind the court below, Miah v. Ahmed, 179 N.J. 511, 528, 846 A.2d 1244 (2004), in the case at bar the appellate court did not issue remand instructions inconsistent with this court's decision. Indeed, the Appellate Division's remand was followed precisely. Beyond this, defendant's jurisdiction argument would result in an absurd anomalythat is, a conviction without a sentence.
For the foregoing reasons, defendant's motion to dismiss count six or, alternatively, to withhold sentence on that count, is hereby denied.
NOTES
[1] The first-degree robbery charge in the indictment was based upon the contention that defendant was ". . . armed with . . . a deadly weapon, a handgun," at the time.
[2] The Appellate Division's reference to the "weapons convictions" patently includes the possession of a weapon for an unlawful purpose charge. After all, only counts two and four were reversed.