902 A.2d 860

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
LEWIS B. MORRISON, DEFENDANT–APPELLANT.

Argued May 1, 2006—Decided July 26, 2006.

 

4

*Michael J. Rogers,* argued the cause for appellant (*McDonald & Rogers,* attorneys).

*Steven C. Lember,* First Assistant Prosecutor, argued the cause for respondent (*John Patrick Barnes,* Hunterdon County Prosecutor, attorney).

*Lawrence S. Lustberg,* argued the cause for *amicus curiae,* Association of Criminal Defense Lawyers of New Jersey (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Mr. Lustberg* and *Elizabeth Kurtz,* on the brief).

Justice ALBIN delivered the opinion of the Court.

In the early morning hours of September 27, 2002, Daniel Shore and his friend defendant Lewis B. Morrison trolled the streets of Plainfield for drugs. When they found a dealer, defendant took their pooled money and bought four decks of heroin—little glassine packets containing the powdery substance. Afterwards, defendant gave two of the decks to Shore. Later that day, Shore died of a heroin overdose.

A grand jury returned an indictment charging defendant with distributing the heroin to Shore and, as such, with causing Shore's drug-induced death. Based on the grand jury record, the trial court concluded that the evidence could not support a finding that defendant distributed the heroin to Shore, but only that defendant and Shore jointly purchased and possessed the drugs for their personal use. For that reason, the court dismissed the distribution and drug-induced death charges. The Appellate Division overruled the trial court, finding that the evidence raised a jury issue, and reinstated the charges. We now reverse. We agree with the trial court that the evidence revealed only that defendant and Shore were joint purchasers and possessors of the heroin and therefore no act of distribution occurred between the two. Accordingly, we hold that the trial court did not abuse its discretion in dismissing the distribution and strict liability for drug-induced death charges.

I.

A.

On the evening of September 26, 2002, Shore and defendant Morrison, both twenty-four years old, were playing in a band

together.[1] After band practice, which ended between 1:00 and
2:00 a.m., they went to defendant's home in Raritan Township.
Defendant lived there with his parents, who apparently were not
home at the time. At approximately 3:00 a.m., with defendant
behind the wheel, defendant and Shore drove to Plainfield to buy
heroin. Defendant was a heroin addict, and Shore had experi-
mented with the drug on an infrequent basis. To make the
purchase, they pooled their money, Shore contributing thirty
dollars and defendant ten dollars. Seemingly familiar with the
area, defendant drove around Plainfield until an unknown man
appeared on a bicycle. They honked the horn and, in return, the
man whistled. In exchange for forty dollars, the man gave
defendant four decks of heroin. Defendant placed the decks in his
pocket and, after driving out of the city, gave one to Shore. While
still in the car, Shore snorted half of the deck. When they
returned to defendant's home, defendant handed Shore a second
deck of heroin. Shore entered a downstairs bathroom and shut
the door, where he presumably ingested the remainder of the
heroin. At the same time, defendant walked upstairs where he
injected his two bags of heroin. When defendant returned down-
stairs, he and Shore "talked about how messed up they both
were." The two young men then went to sleep. Sometime that
afternoon, defendant injected another dose of heroin from the
remnants of two bags he had purchased earlier and fell back
asleep.

At about 6:00 p.m., defendant went outside to feed his horses.
On his return, he found Shore lying on the couch, blue and not
breathing. Unable to wake up Shore, defendant administered

---

[1] The statement of facts presented here is based on the testimony presented at
the grand jury hearing. The State called three witnesses, Detective Benedict
Donaruma, Jr., of the Raritan Township Police Department, Detective James
Fry, Jr., of the Hunterdon County Prosecutor's Office, and Dr. Daksha Shah of
the Hunterdon County Medical Examiner's Office. Among other things, Detec-
tive Donaruma testified to defendant's statements to the police describing the
events leading to Shore's death. Detective Fry testified to statements made to
him by Gerald DeMelio, and Dr. Shah testified to the cause of Shore's death.

CPR. Sometime between 6:10 and 6:20 p.m., a friend, Gerald DeMelio, stopped by defendant's house. As DeMelio entered the house, he saw defendant in a frantic and excited state and Shore lying on the couch. Defendant told DeMelio, "You've got to help me get him to the hospital.... You've got to help me get him out to the car. We have to take him to the hospital." DeMelio asked defendant why he did not simply call 911, but defendant was "set on getting [Shore] out into a vehicle to take him to the hospital." Defendant and DeMelio carried Shore to the rear passenger seat of Shore's jeep, but then were unable to find the keys to the vehicle. After a panicked search, DeMelio discovered what he thought were the keys, threw them to defendant, and left for work.

At approximately 6:48 p.m., defendant dialed 911, and shortly afterwards, Raritan Township Police Department officers and paramedics responded to the scene. When Patrolmen David Carson and Gary Brewer arrived, they observed defendant attempting to perform CPR on Shore, who was lying face up in the driveway. Patrolmen Carson and Brewer, both trained Emergency Medical Technicians, took over the CPR efforts. In response to questioning from Patrolman Carson, defendant repeatedly denied that Shore had taken an "illegal drug," mentioning only that Shore was on some prescription medications. Significantly, an off-duty paramedic on the scene had with him a drug called Narcan, which is administered to counter the effects of a heroin overdose. Because of defendant's deceptive responses, the Narcan was not immediately given to Shore.

Upon his arrival, Raritan Township Police Detective Benedict Donaruma, Jr., also questioned defendant, who again "denied any knowledge of any type of illegal narcotics." Based on defendant's constricted pupils and slow speech, it was obvious to Detective Donaruma that defendant was on drugs and not being truthful. Despite defendant's misleading responses, paramedics by that time had administered the Narcan.

Police officers next took defendant to headquarters, where he was advised of his *Miranda*[2] rights. After a brief line of questioning by Detective Donaruma, defendant broke down crying. Defendant explained that he had a heroin addiction, had been dishonest in his earlier answers, and wanted to tell the truth. Defendant next provided a narrative of the trip that he and Shore took to Plainfield and the events that unfolded.

In the meantime, Shore had been transported to a hospital, where he was pronounced dead. Dr. Daksha Shah of the Hunterdon County Medical Examiner's Office conducted an autopsy and determined that Shore had died of a heroin overdose. Dr. Shah believed that Shore had died quickly, but noted that "sometimes" people in distress from an overdose "do revive and respond to" Narcan. Dr. Shah found the presence of antidepressant medication in Shore's blood, but ruled that out as a potential cause of death.

### B.

A Hunterdon County Grand Jury returned an indictment charging defendant with first-degree strict liability for drug-induced death, in violation of *N.J.S.A.* 2C:35–9 (count one); second-degree reckless manslaughter, in violation of *N.J.S.A.* 2C:11–4(b)(1) (count two); and third-degree distribution of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(3) (count three). Defendant moved to dismiss the indictment on the basis that the prosecutor failed to present sufficient evidence to support the distribution and strict liability for drug-induced death charges and to properly instruct the grand jury on the reckless manslaughter charge.

The trial court dismissed the counts charging distribution and strict liability for drug-induced death, reasoning that there was no evidence to support the conclusion that defendant solely possessed

---

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

and therefore distributed the heroin to Shore. The court determined that Shore "contributed $30 of the $40 used to buy the total amount of heroin ingested by the two friends" and that "[h]e accompanied the defendant to Plainfield on their quest to buy drugs." The court also determined that "[Shore] clearly exercised sufficient control over the heroin purchase so as to facilitate his receiving some immediately" and that the two "men divided the drugs equally at the defendant's home." Thus, "[e]ven taking all inferences in a manner most favorable to the state" in the grand jury setting, the court could not conclude "that the drugs were not equally owned and possessed by both of these individuals." "[T]hat defendant may have been a more experienced heroin user or purchaser" and "engaged in the street transaction without [Shore]'s direct assistance" did not alter the court's view that Shore had "the capacity to exercise dominion over what he considered his portion of the undivided heroin." In short, because Shore had joint and constructive possession of the heroin, defendant could not have distributed the illicit drug to him. Accordingly, the lack of evidential support for the distribution and drug-induced death counts required dismissal of those charges without prejudice.[3]

The court also dismissed without prejudice the reckless manslaughter count because the grand jury received inadequate instructions on the type of reckless conduct that would constitute such a charge. The court noted that the absence of an adequate instruction might have led the grand jury to believe that manslaughter was a "legal alternative to the drug-induced death charge." The court, however, did not foreclose the possibility of a prosecution on a theory that Shore's death was caused by defendant's providing false information to the police regarding Shore's ingestion of drugs. The State appealed.

---

[3] The court noted that it appeared "that the only way that those counts could be represented to a Grand Jury is if the state had new evidence beyond what [had been] heard ... on the issue of joint possession or constructive possession."

## C.

In an unpublished decision, the Appellate Division reversed the trial court's dismissal of the distribution and drug-induced death counts. The panel recognized the concept, articulated in *State v. Lopez*, 359 *N.J.Super.* 222, 233, 819 *A.*2d 486 (App.Div.), *certif. granted sub nom. State v. Garcia*, 177 *N.J.* 576, 832 *A.*2d 326, *appeal dismissed per stipulation*, 178 *N.J.* 372, 840 *A.*2d 257 (2003), that " 'as a matter of law, two or more defendants cannot intend to distribute to each other drugs they jointly possess.' " The panel, however, declined to "hold that the sharing of drugs, the pooling of money or the mere presence at the scene of a drug transaction constitutes joint possession as a matter of law." Relying on authority from other jurisdictions, the panel framed the issue as "whether there was 'some evidence' presented to the grand jury that there was not an equal, active participation by both defendant and Shore in the acquiring and possession of the heroin." Having framed the issue that way, the panel rejected the trial court's evidential analysis and maintained that the State satisfied the "limited standard of proof" required in a grand jury presentation. "Considering the testimony and its reasonable inferences," the panel could not "find as a matter of law that Shore was an equally active participant to the transaction."

In reaching that conclusion, the panel compared defendant, "a heroin addict" experienced at foraging for heroin, to Shore, an infrequent user of the drug. The panel also believed a rational factfinder could conclude that by "put[ting] up the $30 toward the $40" drug purchase and yet allowing defendant to have half of the heroin, Shore was compensating defendant for locating the dealer and making the deal. Based on various different inferences that could be drawn from the evidence, the panel believed that the factual issues in dispute should be decided by a jury. Accordingly, the distribution and drug-induced death charges were reinstated for trial.

On the other hand, the panel affirmed the dismissal of the reckless manslaughter count based on the "insufficient instruc-

tions" given to the grand jury. Because of the inadequate instructions, the panel suggested that the grand jury may have indicted defendant based on "a failure by defendant to promptly call police or emergency medical personnel" even though defendant was "under no legal duty to do so." The panel not only observed that "criminal liability cannot be based on an omission or failure to act absent a duty to perform the omitted act," but also found that "there was a total absence of medical testimony or other evidence to indicate that any delay or failure to act by defendant was a contributing cause to Shore's death."

We granted defendant's petition for certification challenging the reinstatement of the distribution and drug-induced death charges. 185 *N.J.* 596, 889 *A.*2d 444 (2005). We also granted the motion of the Association of Criminal Defense Lawyers of New Jersey to participate as amicus curiae.

## II.

We must determine whether the trial court abused its discretion in dismissing the distribution and strict liability for drug-induced death charges. The trial court dismissed those charges because it concluded that the State did not present evidence to support an element common to both crimes—an act of distribution by defendant. The Appellate Division disagreed with that assessment.

Defendant maintains that "[t]he sharing of drugs between two persons who simultaneously acquire joint possession for their own use" does not constitute distribution of a controlled dangerous substance. Defendant claims that he purchased the four decks of heroin for himself and Shore with their pooled money, and although he actually possessed the drugs at the moment of the buy, Shore, who was present, jointly and constructively possessed the drugs. Cast in that light, the passing of the drugs from defendant to Shore was not an act of distribution, but rather Shore's constructive possession becoming actual possession.

Conversely, the State asserts that in deciding the adequacy of the evidence presented to the grand jury, it must be given the

benefit of all favorable inferences in support of the charges. Viewed from that perspective, the State insists that Shore was not "in any position to exercise intentional control or dominion over the drugs" until defendant actually gave the heroin to him. Thus, if Shore did not constructively possess the heroin before defendant transferred it to him, defendant distributed the drugs.

In its amicus curiae brief, the Association of Criminal Defense Lawyers of New Jersey argues that prosecuting defendant under the strict liability for drug-induced death statute both "exceeds ... constitutional limitations" and contradicts the "intent of the Legislature in enacting the statute."

We now hold that a person cannot distribute a controlled dangerous substance to a person with whom he shares joint possession. Viewed even in the light most favorable to the State, the totality of circumstances in this case compels the conclusion that defendant and Shore jointly purchased and possessed the heroin. Because defendant did not distribute the heroin, the trial court properly dismissed counts one and three of the indictment.

A.

We begin by setting forth the standard of review of a trial court's dismissal of counts of an indictment based on inadequate evidence presented to the grand jury. Under the New Jersey Constitution, no defendant may be compelled to stand trial for a crime unless the State first presents the matter to a grand jury and an indictment is returned. *N.J. Const.* art. I, ¶ 8. The grand jury must be presented with sufficient evidence to justify the issuance of an indictment. The absence of any evidence to support the charges would render the indictment "palpably defective" and subject to dismissal. *See State v. Hogan,* 144 *N.J.* 216, 228–29, 676 *A*.2d 533 (1996).

A trial court, however, should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case. *See id.* at 236, 676 *A*.2d 533; *see*

*also State v. Vasky,* 218 *N.J.Super.* 487, 491, 528 *A.*2d 61 (App.Div. 1987). The Standard Grand Jury Charge instructs grand jurors that they "are not to return an indictment unless the State has presented evidence which together with the reasonable inferences [they] draw from that evidence[ ] leads [them] to conclude that (1) a crime has been committed and (2) the accused has committed it." *Standard Grand Jury Charge* (Apr. 25, 2006). In short, in reviewing the grand jury record on a motion to dismiss an indictment, the trial court should use a standard similar to that applicable in a motion for a judgment of acquittal at trial, *R.* 3:18–1. The court should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it. *See State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967) (per curiam) (explaining that standard for evaluating sufficiency of evidence is "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt").

### B.

Defendant was charged with both distribution of a controlled dangerous substance (heroin) to Shore, in violation of *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(3), and strict liability for Shore's drug-induced death on the basis of the alleged heroin distribution, in violation of *N.J.S.A.* 2C:35–9. Both crimes require proof of an act of drug distribution. The distribution statute provides that "it shall be unlawful for any person knowingly or purposely . . . [to] distribute or dispense . . . a controlled dangerous substance." *N.J.S.A.* 2C:35–5(a)(1). The drug-induced death statute provides that "[a]ny person who . . . distributes or dispenses [heroin or other classified controlled dangerous substances], in

violation of [the distribution statute], is strictly liable for a death which results from the injection, inhalation or ingestion of that substance." *N.J.S.A.* 2C:35–9(a).

The key issue here is whether defendant distributed the heroin to Shore or whether both jointly possessed the heroin at the time defendant purchased the drug from the street dealer. To address that issue, we must understand the meaning of the concepts of distribution, possession, and joint possession of a controlled dangerous substance under the Comprehensive Drug Reform Act, *N.J.S.A.* 2C:35–1 to 2C:36–10. Under the Act, distribution is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance" for other than lawful medical or research purposes. *N.J.S.A.* 2C:35–2. It hardly requires stating that the "transfer" of a controlled dangerous substance cannot occur under *N.J.S.A.* 2C:35–2 if the intended recipient already possesses that substance.

The law recognizes three distinct forms of possession, actual, constructive, and joint. *State v. Spivey,* 179 *N.J.* 229, 236, 844 *A.*2d 512 (2004). A person has actual possession of "an object when he has physical or manual control of it." *Ibid.* (citing *State v. Brown,* 80 *N.J.* 587, 597, 404 *A.*2d 1111 (1979)). Alternatively, a person has constructive possession of "an object when, although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." *Id.* at 237, 844 *A.*2d 512 (quoting *State v. Schmidt,* 110 *N.J.* 258, 270, 540 *A.*2d 1256 (1988)). Two persons have joint possession of an object when they "share actual or constructive knowing possession of" that object. *Model Jury Charges (Criminal),* Possession (Apr. 18, 2005); *see also Brown, supra,* 80 *N.J.* at 600–01, 404 *A.*2d 1111 (approving trial court's instructions that " '[i]f two or more persons share actual or constructive possession, possession is then said to be joint, that is, if they knowingly share control over the article' " (emphasis omitted)); *Lopez, supra,* 359 *N.J.Super.* at 233, 819 *A.*2d 486

(explaining that "[t]he legal concept of 'joint possession' is premised upon a metaphysical event in which two or more persons simultaneously possess an entire object").

Relying on those basic concepts, a number of jurisdictions have concluded that when "two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further." *United States v. Swiderski*, 548 *F*.2d 445, 450 (2d Cir.1977); *accord Commonwealth v. Johnson*, 413 *Mass.* 598, 602 *N.E.*2d 555, 559 (1992); *People v. Schultz*, 246 *Mich.App.* 695, 635 *N.W.*2d 491, 498 (2001).

In the seminal case of *United States v. Swiderski, supra*, the defendant and his codefendant fiancée, accompanied by a government informant, went to a studio apartment in New York City to purchase cocaine. 548 *F*.2d at 447–48. There, a drug supplier gave the defendant a package containing cocaine, which both he and his fiancée sampled. *Id.* at 448. The defendant purchased the package for $1,250, put it in his pocket, and left with his fiancée and the informant. *Ibid.* Shortly afterwards, government agents stopped the van in which they were traveling and arrested them. *Ibid.* The codefendant fiancée had the cocaine in her purse along with a substantial amount of cash. *Ibid.* The defendant had in his possession only $529. *Ibid.* Both were charged with possession with intent to distribute cocaine in violation of 21 *U.S.C.A.* § 841(a). *Id.* at 449. At trial, the government and the defendants disputed whether the defendants intended to sell the cocaine to third parties. *Id.* at 448.

In summation, the Assistant United States Attorney argued that "even if the defendants bought the cocaine with a view to sharing it between themselves as users, . . . this proof would be sufficient to establish possession 'with intent to distribute.' " *Ibid.* In instructing the jury, the court "made it clear over defense objections that distribution could be satisfied solely by a transfer between [the defendant] and [his fiancée]." *Id.* at 449. Both

defendants were found guilty by the jury of possession with intent to distribute. *Ibid.* The Second Circuit Court of Appeals reversed the convictions, concluding that, in enacting the Comprehensive Drug Abuse Prevention and Control Act, Congress did not intend to make "the exchange of physical possession between two persons who jointly acquired and hold the drug for their own use" an act of distribution under 21 *U.S.C.A.* § 841(a). *Id.* at 449–50.

The Second Circuit limited its holding to "the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use." [4] *Id.* at 450–51. The Second Circuit distinguished its decision from *United States v. Branch,* 483 *F.*2d 955 (9th Cir.1973) (per curiam), in which the Ninth Circuit Court of Appeals held that an act of distribution under 21 *U.S.C.A.* § 841(a) occurred when "the defendant had handed over a small amount of marijuana to an informer for smoking purposes." *Swiderski, supra,* 548 *F.*2d at 450. The Second Circuit did not "quarrel" with the result in *Branch* because in that case "there was no evidence that the informer-friend had jointly and simultaneously acquired possession of the drug at the outset." *Ibid.* Unlike in *Swiderski,* "sole possession in *Branch* rested with the defendant" and therefore the transfer of the drug to the

---

[4] A number of jurisdictions have limited *Swiderski* to its precise holding. *See, e.g., United States v. Speer,* 30 *F.*3d 605, 609 (5th Cir.1994) (stating that court "need not pass on the validity of the *Swiderski* doctrine" because it was "undisputed that at least some of the cocaine was intended . . . to be subsequently distributed to [a person] who was not at or near the scene of the transaction"), *cert. denied,* 513 *U.S.* 1028, 115 *S.Ct.* 603, 130 *L.Ed.*2d 514 (1994), and *cert. denied,* 513 *U.S.* 1098, 115 *S.Ct.* 768, 130 *L.Ed.*2d 664 (1995); *Long v. United States,* 623 *A.*2d 1144, 1150–51 (D.C.1993) (declining government's "invitation to reject *Swiderski* as incorrectly decided" but agreeing with government that *Swiderski* did not apply because defendant brought drugs home to his friends and thus served " 'as a link in the chain of distribution' " (quoting *Swiderski, supra,* 548 *F.*2d at 450)); *State v. Moore,* 529 *N.W.*2d 264, 266–67 (Iowa 1995) (declining to apply *Swiderski* where both participants did not "actively participate[ ] in the drug purchase" but rather one "purchase[d] drugs and later share[d] them with others," noting that in those circumstances delivery has occurred "even if joint funds have been used to finance the purchase").

informer, whether a "friend or not," constituted an act of distribution. *Ibid.*

Our Appellate Division applied "the *Swiderski* principle" in *State v. Lopez, supra,* and held that "the sharing of drugs by individuals in joint possession . . . does not constitute 'intent to distribute' within the meaning of *N.J.S.A.* 2C:35–5 and *N.J.S.A.* 2C:35–7." 359 *N.J.Super.* at 228, 236, 819 *A.*2d 486. In that case, in executing a warrant to search an apartment shared by Lopez and Garcia, the police discovered, in all, 7.37 grams of marijuana, 0.41 grams of cocaine, and drug paraphernalia. *Id.* at 229, 819 *A.*2d 486. In particular, the police found remnants of three hand-rolled marijuana cigarettes in the living room, a few grams of loose marijuana and a marijuana cigarette in Lopez's bedroom, and the cocaine in the kitchen. *Ibid.* Lopez and Garcia were charged with and convicted of a number of crimes, including possession and possession with intent to distribute cocaine and marijuana. *Id.* at 226–27, 819 *A.*2d 486.

The appellate panel noted that "[t]he prosecution's theory of culpability as to the element of 'possession' was based on joint possession by both defendants of the marijuana and the cocaine." *Id.* at 233, 819 *A.*2d 486. Nevertheless, the prosecutor argued in summation that " 'the sharing of this marijuana by the two of them is possession with the intent to distribute.' " *Id.* at 232, 819 *A.*2d 486 (emphasis omitted). The panel found the prosecutor's remarks, suggesting that distribution occurs when two persons in joint possession of drugs share those same drugs with each other, to be a misstatement of law. *Id.* at 233, 819 *A.*2d 486. The panel explained:

> The legal concept of "joint possession" is premised upon a metaphysical event in which two or more persons simultaneously possess an entire object, without leaving any piece of it outside the joint possessors' control. A corollary of this proposition is that one cannot acquire something one already possesses. Having an object with the intent to distribute presumes that the intended recipient does not have possession of it. Therefore, as a matter of law, two or more defendants cannot intend to distribute to each other drugs they jointly possess. Stated differently, the element of "intent to distribute" under either *N.J.S.A.* 2C:35–5 or *N.J.S.A.* 2C:35–7 cannot be established on the basis of the sharing of drugs between or among joint possessors.

[*Id.* at 233–34, 819 *A.*2d 486.]

Because the prosecutor's statement conflicted with those principles of law and was clearly capable of producing an unjust result, the Appellate Division reversed the possession with intent to distribute convictions. *Id.* at 233–36, 819 *A.*2d 486.

We accept the self-evident precept in *Lopez* that "one cannot acquire something one already possesses" and thus two or more persons cannot "distribute to each other drugs they jointly possess." *Id.* at 233, 819 *A.*2d 486. We also accept the limited *Swiderski* principle that when "two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together," they have not committed the crime of distribution, in violation of *N.J.S.A.* 2C:35–5. *See Swiderski, supra,* 548 *F.*2d at 450. We note that the appellate panel in this case, although sustaining the indictment, accepted the basic principles enunciated in *Swiderski* and *Lopez* as discussed above.

We also note that in enacting New Jersey's Comprehensive Drug Reform Act, the Legislature made findings and declarations that shed some light on how distinctions should be made concerning culpability. *N.J.S.A.* 2C:35–1.1. The Legislature stated that "it is the policy of this State to distinguish between drug offenders based on the seriousness of the offense, considering principally the nature, quantity and purity of the controlled substance involved, and the role of the actor in the overall drug distribution network." *N.J.S.A.* 2C:35–1.1(c). In passing the Act, the Legislature deemed the sentencing guidelines under the old drug laws inadequate in "identify[ing] the most serious offenders and offenses and [in] guard[ing] against sentencing disparity." *N.J.S.A.* 2C:35–1.1(d). The consequences of a finding of distribution are significantly greater than that of possession. Whereas the maximum term of imprisonment for distributing heroin that causes a person's drug-induced death is twenty years, *N.J.S.A.* 2C:35–9(a) and 2C:43–6(a)(1), the maximum term for possession of heroin is only five years, *N.J.S.A.* 2C:35–10(a)(1) and 2C:43–6(a)(3). The Legislature expected the criminal culpability of parties to bear some

proportion to their conduct. We are mindful, as well, that criminal statutes are to be strictly construed. *State v. Hodde,* 181 *N.J.* 375, 379, 858 *A.*2d 1126 (2004).

## C.

We now apply the concepts and principles discussed to the facts of this case. In determining whether there are any facts to support the indictment charging defendant with distributing two decks of heroin to Shore, we must engage in a fact-sensitive analysis based on the totality of the circumstances. Among the factors to be considered are whether the relationship of the parties is commercial or personal, the statements and conduct of the parties, the degree of control exercised by one over the other, whether the parties traveled and purchased the drugs together, the quantity of the drugs involved, and whether one party had sole possession of the controlled dangerous substance for any significant length of time. *Cf. Swiderski, supra,* 548 *F.*2d at 450 (discussing factors to consider in determining whether fair inference can be drawn that party possessed drugs with intent to distribute).

The grand jury testimony revealed that defendant and Shore played in a band together and enjoyed a friendly relationship. After band practice, in the early morning hours of September 27, 2002, they traveled to defendant's home and from there to Plainfield in search of heroin. Defendant had a heroin addiction, and Shore had dabbled with the drug in the past. They drove together and pooled their money, Shore contributing thirty dollars and defendant ten dollars. Despite the Appellate Division's speculation that the division of proceeds "could be interpreted as compensation for defendant finding the drug seller and making the purchase," nothing in the grand jury record even remotely suggests that defendant and Shore's relationship was commercial in nature. Considering that defendant provided the transportation and the place for the evening, the difference in their monetary contributions is not an overriding factor, transforming a case of simple joint possession into distribution. Here were two friends

on a misguided and ill-fated venture. They found the street dealer together, but as a practical matter only one could actually conduct the purchase for the two of them.

In reality, defendant was nothing more than Shore's designee, making the buy for both. Typically, when two persons jointly purchase drugs, the one who gives the money for the drugs will necessarily have the drugs in his possession before he hands a portion over to his companion. To accept the State's strained view would lead to the absurd result that an act of distribution between defendant and Shore depended solely on the fortuity of who first took in hand the drugs from the dealer. Both defendant and Shore acted for a common purpose, and both were simultaneously present at the time of the drug purchase. Shore had the intent and capacity to take control of his share of the heroin. The evidence clearly implies that when defendant bought the four decks both were in joint possession of the drugs—that is, defendant had actual possession and Shore constructive possession of the heroin. *See Spivey, supra,* 179 *N.J.* at 236–37, 844 *A.*2d 512. Viewing the evidence in the light most favorable to the State, we agree with the trial court that because defendant and Shore simultaneously and jointly acquired possession of the drugs for their own use, intending only to share it together, defendant cannot be charged with the crime of distribution. *See Swiderski, supra,* 548 *F.*2d at 450–51.

It bears mentioning that, during his presentation, the prosecutor chose not to instruct the grand jury on the principles of constructive and joint possession, but only on the elements of distribution. Without those instructions, the grand jury was blind to the options available to it. Had the grand jury been informed about constructive and joint possession, it may well have come to the same conclusion that this Court and the trial court have reached.[5]

---

[5] Defendant did not challenge in his petition to this Court the instructions given to the grand jury. We therefore decline to pass judgment on whether those instructions were adequate.

## III.

To summarize, we agree with the trial court that there is insufficient evidence in the grand jury record to support count one charging defendant with strict liability for Shore's drug-induced death and count three charging distribution of a controlled dangerous substance. We therefore find that the trial court did not abuse its discretion in dismissing those counts of the indictment. We reverse the judgment of the Appellate Division and remand to the trial court for entry of an order consistent with this opinion.

Justice RIVERA–SOTO, dissenting.

In this appeal, the majority sustains the dismissal of an indictment charging defendant with first-degree strict liability for drug-induced death, in violation of *N.J.S.A.* 2C:35–9; second-degree reckless manslaughter, in violation of *N.J.S.A.* 2C:11–4(b); and third-degree distribution of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(3), charges which arose as a result of defendant's purchase and distribution of heroin to his friend Daniel Shore and Shore's death resulting from his ingestion of that heroin. According to the majority, "the evidence [before the grand jury] revealed only that defendant and Shore were joint purchasers and possessors of the heroin and therefore no act of distribution occurred between the two." *Ante*, 188 *N.J.* at 5, 902 *A*.2d at 862 (2006). For that reason, the majority concludes that "the trial court did not abuse its discretion in dismissing the distribution and strict liability for drug-induced death charges." *Ante*, 188 *N.J.* at 5, 920 *A*.2d at 862 (2006). For the reasons aptly explained by the Appellate Division, I respectfully dissent.

Reversing the trial court's dismissal of the indictment in this case, the Appellate Division noted that

both the Constitution and common law of this State recognize the independence of the grand jury. For this reason courts are reluctant to intervene in the indictment process. It is well-established that an indictment should be disturbed only on the clearest and plainest ground, and only when it is manifestly deficient or palpably defective. The quantity and quality of evidence presented to the grand jury need

not be great to uphold an indictment. If the indictment is clear on its face, there need be only some evidence as to the elements of each offense. Moreover, the evidence presented may be largely or even wholly hearsay testimony.
[(citations and internal quotation marks omitted).]

Based on those core concepts, the Appellate Division identified the issue for resolution as "whether the evidence received by the grand jury was sufficient for a finding of probable cause on the element of distribution necessary to the [first-degree strict liability for drug-induced death] and [third-degree distribution of a controlled dangerous substance] counts of the indictment."

That analysis led the Appellate Division directly to a discussion of the two cases principally relied on by the majority: *United States v. Swiderski*, 548 *F.*2d 445 (2nd Cir.1977), and *State v. Lopez*, 359 *N.J.Super.* 222, 819 *A.*2d 486 (App.Div.), *certif. granted sub nom., State v. Garcia*, 177 *N.J.* 576, 832 *A.*2d 326, *appeal dismissed*, 178 *N.J.* 372, 840 *A.*2d 257 (2003). Although the panel endorsed the holdings in both *Swiderski* and *Lopez*, that is, that joint possession of controlled substances is inconsistent with the intent to distribute, the Appellate Division properly focused on a substantive, and ultimately conclusive, distinction not addressed by the majority: the procedural posture of this case. Noting that *Swiderski* and *Lopez* both involved the appellate review of convictions after trial and distinguishing this case because it involved a pretrial dismissal of the indictment, the panel explained that it "decline[d] to read *Lopez* to hold that the sharing of drugs, the pooling of money or the mere presence at the scene of a drug transaction constitutes joint possession as a matter of law." Respecting the constitutional sanctity of the grand jury process, the Appellate Division concluded that "[t]he issue is primarily factual in nature and properly reserved for the factfinder."

I am entirely in accord with *Swiderski's, Lopez's*, the majority's and the panel's legal reasoning that the joint possession of controlled substances is inconsistent with the intent to distribute statutorily required for the crimes for which defendant stands charged. However, I part company with the majority's conclusion because, as the Appellate Division correctly acknowledged, great

deference is due to our constitutionally mandated grand jury process. Unless the basic protective guidelines applied to that process are violated, and there is no intimation here that they were violated in any way, the adversary process started by an indictment must be allowed to proceed. Viewed differently, the issue of whether defendant's and his victim's possession of the heroin that claimed that victim's life was joint is a matter of defense at trial, and was not an element of the charges returned against defendant. Therefore, the resolution of this issue should not be addressed prematurely via a motion to dismiss the indictment, but at the ripe time for the determination of defenses: at trial.

I respectfully dissent.

*For reversal and remandment*—Chief Justice PORITZ, and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—6.

*For affirmance*—Justice RIVERA–SOTO—1.