997 A.2d 233 (2010)
413 N.J. Super. 540
STATE of New Jersey In The Interest of T.S., a minor.
DOCKET NO. A-1390-08T4
Superior Court of New Jersey, Appellate Division.
Submitted November 10, 2009.
Decided June 2, 2010.
Yvonne Smith Segars, Public Defender, for appellant (Abby P. Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
Ronald J. Casella, Cumberland County Prosecutor, for respondent (James O. Turner, Jr., Assistant Prosecutor, of counsel and on the brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
FUENTES, J.A.D.
T.S., a teenage girl, was adjudicated delinquent for an act that if committed by an adult would have constituted the disorderly persons offense of simple assault, N.J.S.A. 2C:12-1a(1). By way of disposition, the Family Part placed T.S. on probation for a period of six months. As a condition of probation, the court directed T.S. to write a letter of apology to the victim, required her to complete a course in anger management, restrained her from having any contacts with the victim, and ordered her to serve ten days of confinement to be served in the Cumberland County Youth Detention Center. The execution of the custodial part of the disposition was stayed pending the outcome of this appeal.
On appeal, T.S. argues that the verdict of adjudication was against the weight of the evidence and that the disposition ordered by the court was both illegal and excessive. After reviewing the record before us, we affirm the adjudication of delinquency but reverse the custodial part of the disposition. The Juvenile Justice Code does not authorize the Family Part to condition a term of probation upon the completion of a period of detention.
*234 We gather the following facts from the evidence presented at trial. On May 29, 2008, Millville Police Officer Mathew Radcliff responded to a hospital in Vineland to investigate an allegation of assault against a teenage girl identified here as B.D. When Radcliff arrived at the hospital, he saw that B.D. had a mark or bruise on her left eye consistent with a simple assault. When B.D. came to the police station the following day with her grandparents, however, the area under her left eye looked "puffy" with blood. Based on this observation and the hospital's discharge summary, Radcliff decided to charge her attacker with aggravated assault.
Based on B.D.'s account of events, Radcliff notified T.S.'s mother that her daughter was a suspect in the assault against B.D. The following day, T.S. voluntarily reported to the police station accompanied by her step-father. She was formally charged with aggravated assault, N.J.S.A. 2C:12-1b(1), and released into the custody of her step-father. According to Radcliff, T.S. did not have any visible bruises when she reported to the police station two days after the alleged assault.
At trial, it was not contested that B.D. and T.S. attended the same high school and that both girls were fifteen years old at the time of the incident. According to B.D., the altercation that occurred on the afternoon of May 29, 2008, emanated from an incident that took place earlier that day at school. B.D. testified that T.S. came into her class "to give something to the teacher." As T.S. came into the classroom, a girl seated in front of B.D. began to laugh. The same thing occurred when T.S. returned to the classroom a second a time. That time, T.S. "turned around to see what was so funny." As T.S. was leaving the classroom, B.D. claimed that T.S. "cracked the door open" and said to her: "That's fine, when I see you after school, I'm going to beat you up." According to B.D., the classroom teacher heard T.S.'s remark and told B.D. to "pay her no mind. Just calm down."
B.D. testified that as she was walking home from school with two acquaintances later that afternoon, she noticed that T.S. was standing on the corner. As B.D. walked by T.S. with her head down, T.S. "hit [her] on [her] blind side ... left side." This caused B.D. to drop the items she was holding. According to B.D., she struck T.S. back, and the altercation escalated from there. B.D. remembered being on the ground covering her face as T.S. hit her repeatedly. After the violence stopped, B.D. walked home and laid down. Because she was in pain, her grandparents took her to the hospital emergency room at approximately 8:00 p.m. She was treated, given medication, and released. B.D. did not attend school the following day.
T.S.'s mother testified about injuries she saw on her daughter's face on the day of the incident. She testified that T.S. had a lacerated lip, although not serious enough to require stitches, bruises over her right eye, and a scratch on her left cheek.
T.S. also testified in her own defense. She alleged that there had been animosity between her and B.D. since September of 2007. According to T.S., B.D. was confrontational when T.S. delivered a note to the classroom teacher, and B.D. was the initial aggressor later that afternoon. T.S. testified that B.D. "smacked [her] across [her] face" first. She claimed that she was forced to fight thereafter as a matter of self-defense.
Against this evidential backdrop, the trial judge, sitting as the fact finder, rejected T.S.'s version of events, and accepted, as a matter of credibility, the testimony of B.D. The court concluded that the evidence supported an adjudication of delinquency *235 against T.S. based on simple assault. N.J.S.A. 2C:12-1a(1) defines the disorderly persons offense of simple assault as an attempt "to cause or purposely, knowingly or recklessly cause[ ] bodily injury to another". N.J.S.A. 2C:11-1a defines "bodily injury" as "physical pain, illness or any impairment of physical condition."
Based on this evidence, and the deference we are required to give to the trial court's factual findings, State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999), we are satisfied that there is no legal basis to reverse the court's determination of delinquency. The evidence before the Family Part amply supported that B.D. suffered physical pain as a result of the attack. Indeed, she was taken to the hospital complaining of pain and was given medication for such pain upon her discharge.
We reach a different conclusion, however, with respect to the court's imposition of a period of detention as a condition of a probationary term. The Juvenile Justice Code does not contain the equivalent of N.J.S.A. 2C:43-2(b)(2), permitting a criminal court to sentence a defendant to a jail term not to exceed 364 days as a condition of probation. This so-called "split sentence" option, as approved by the Supreme Court in State v. Hartye, 105 N.J. 411, 418-19, 522 A.2d 418 (1987), does not violate the Criminal Code's presumption of non-incarceration for a probationary sentence imposed in connection with a third-degree offense or lower.
N.J.S.A. 2A:4A-44b(1) of the Juvenile Justice Code provides for a presumption of non-incarceration for any fourth degree offense or lower. The Juvenile Justice Code does not contain a provision equivalent to N.J.S.A. 2C:43-2(b)(2). There is nothing in this record that supports overcoming the presumption of non-incarceration in N.J.S.A. 2A:4A-44b(1) for this adjudication of delinquency based on a disorderly persons offense.
The adjudication of delinquency based on simple assault is affirmed. The part of the disposition order directing that T.S. serve a period of ten days detention as a condition of probation is reversed. The order of disposition is otherwise affirmed.