**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3913-22

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JORGE L. NAVAHEREDIA,

     Defendant-Respondent.

_____

Submitted March 20, 2024 – Decided April 4, 2024

Before Judges Firko and Vanek.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 22-06-0401.

Christine A. Hoffman, Gloucester County Prosecutor, attorney for appellant (Alec Joseph Gutierrez, Assistant Prosecutor, on the brief).

Law Office of Stephen R. Piper, LLC, attorney for respondent (Stephen Rogers Piper, on the brief).

PER CURIAM

On leave, the State appeals from the July 27, 2023 Law Division order granting defendant Jorge Navaheredia's motion to dismiss second-degree burglary—count five—in an eight-count indictment. On appeal, the State claims there was prima facie evidence presented to the grand jury establishing each element of the dismissed charge warranting reversal. More specifically, the State's brief sets forth the following sole argument:

> THE TRIAL COURT ERRED IN DISMISSING COUNT [FIVE] OF THE INDICTMENT ALLEGING SECOND[-]DEGREE BURGLARY.

After careful consideration of the facts and applicable legal principles, we reverse the dismissal of the second-degree burglary charge (count five) of the indictment.

## I.

The record shows that on June 23, 2022, a Gloucester County grand jury returned indictment number 22-06-0401 charging defendant with third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count one); two counts of fourth-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (counts two and three); third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count four); second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count five); fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a)

(counts six and eight); and third-degree burglary, N.J.S.A. 2C:18-3(a) (count seven).

At the grand jury hearing, the State presented testimony from Corporal Andrew Roberts and Detective Dante Laspata. Corporal Roberts testified about the events that occurred on March 9, 2022. The victim, A.M.,[1] called 9-1-1 and reported to the dispatcher that a man, later identified as defendant, was inside the victim's residence, a sorority house, eating her food. A.M. reported to the investigating officers that at approximately 4:26 a.m., "she awoke to an unknown male touching her feet" while it "appeared" defendant "was touching his intimate parts."

Corporal Roberts testified that A.M. stated she sat up in bed and "confronted the male," which "startled" him. Approximately thirty minutes later, A.M. heard a noise coming from the kitchen, investigated, and observed defendant "flee the kitchen out the side door." Corporal Roberts explained a review of the house surveillance video revealed that a male "left the house through the kitchen door and ran south." Corporal Roberts testified that he showed the surveillance video to the other residents in the sorority house, but

---

[1] We use initials to protect the identity of the victims.

no one recognized the person in the video. Several residents confirmed defendant "shouldn't have been there."

Corporal Roberts testified that A.M.'s landlord reviewed "additional surveillance video," which revealed defendant left the house after A.M. confronted him and "returned minutes later." Corporal Roberts further explained that defendant took A.M.'s car keys, went into her car, stole $300 in cash, and a pair of Nike sneakers. Corporal Roberts stated that A.M.'s roommate, S.R., reported to him that she was missing $340 in cash from her pocketbook, which had been in her bedroom.

According to Corporal Roberts, a witness, D.W., lived two houses away from the victims' residence. Corporal Roberts testified that D.W. reviewed the surveillance video and recognized defendant as a male he encountered earlier that day at a bar in Glassboro. D.W. reported to the police that he believed defendant was an Uber driver who had picked him up in a white car and taken D.W. to his house. D.W. told Roberts that defendant "offered him beer from his trunk."

Corporal Roberts testified that D.W. told him that he and defendant "entered a neighboring residence to socialize," and the white vehicle was registered to defendant's wife. Given this information, Corporal Roberts

4

testified the police contacted A.M. and S.R., who both reported that they received friend requests from an Instagram account titled "Jorge_Iuisnava," which matched a photograph of defendant. A.M. and S.R. were advised to deny the friend request from defendant and to block any further communication from that account.

Detective Laspata testified that on March 19, 2022, at approximately 6:27 a.m., he was dispatched to a second residence—a single family house rented to college students—in Glassboro for a report of a burglary in progress. Detective Laspata stated the female residents were inside their room and heard "somebody moving about the house." One resident "saw a figure standing there in the doorway." When the police arrived, Detective Laspata testified they found defendant hiding in a cabinet under the kitchen sink with multiple pairs of female undergarments.

Detective Laspata explained defendant was placed under arrest. His white vehicle was also found on the scene. Detective Laspata testified the police looked inside the vehicle from the outside and observed female undergarments and mail from the second residence. In a court authorized search of defendant's vehicle, police found additional female garments, defendant's identification, and a poster taken from the sorority house.

A-3913-22

Following the testimony that day, the grand jury returned indictment number 22-06-0401 charging defendant as stated. Defendant challenged the insufficiency, inadequacy, and incompetency of the evidence supporting the second-degree burglary charge in count five. The State opposed the motion contending the indictment was palpably sufficient, all essential elements of the offense were established by the evidence, and the rational inferences drawn from that evidence were to be viewed in the light most favorable to the State.

On July 19, 2023, the motion judge conducted oral argument on defendant's motion. Following argument that day, the motion judge rendered an oral opinion and granted the motion. The motion judge found count five should be dismissed because defendant did not inflict an injury upon A.M. and there was no evidence she suffered physical illness, or impairment of physical condition, pain, as defined by the assault statute, N.J.S.A. 2C:11-1(a). The motion judge also held that the State failed to present any evidence that defendant purposely attempted to inflict bodily injury on A.M.

In addition, because the State did not present evidence to the grand jury that A.M. was slapped, kicked, hit, or put into a headlock in order to satisfy the definition of bodily injury set forth in the assault statute and case law, the motion judge determined there was insufficient proof that defendant intentionally

6

inflicted bodily injury upon A.M. or attempted to commit an assault upon her as part of the commission of the burglary, warranting dismissal of count five. The motion judge found that defendant's touching or "tickling" A.M.'s foot did not constitute a bodily injury.

In regard to the issue of whether defendant attempted to inflict bodily injury on A.M., the motion judge declined to speculate as to what defendant's state of mind was under the circumstances and ruled the State had not shown "defendant's conscious object was to engage in conduct to inflict bodily injury or engage in conduct designed to cause bodily injury." A memorializing order was entered. We then granted the State's motion for leave to appeal.

II.

A "grand jury must be presented with sufficient evidence to justify the issuance of an indictment. The absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal." State v. Morrison, 188 N.J. 2, 12 (2006) (citing State v. Hogan, 144 N.J. 216, 228-29 (1996)). However, "[a]t the grand jury stage, the State is not required to present enough evidence to sustain a conviction." State v. Feliciano, 224 N.J. 351, 380 (2016) (citing State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 27 (1984)).

A-3913-22

The prosecutor need only present "some evidence establishing each element of the crime to make out a prima facie case." Morrison, 188 N.J. at 12. "The quantum of this evidence . . . need not be great." State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div. 1997) (citing State v. Bennett, 194 N.J. Super. 231, 234 (App. Div. 1984)). Our Supreme Court has explained, "[t]he grand jury 'is an accusative rather than an adjudicative body,' whose task is to assess whether there is an adequate basis for bringing a criminal charge.'" State v. Saavedra, 222 N.J. 39, 56 (2015) (quoting Hogan, 144 N.J. at 229-30).

"[I]n reviewing the grand jury record on a motion to dismiss an indictment, the trial court should use a standard similar to that applicable in a motion for a judgment of acquittal at trial" under Rule 3:18-1. Morrison, 188 N.J. at 13. "The court should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred, and that the defendant committed it." Ibid. "An indictment is presumed valid and should be disturbed only on the 'clearest and plainest ground.'" State v. Perry, 124 N.J. 128, 168-69 (1991) (quoting N.J. Trade Waste Ass'n, 96 N.J. at 18-19).

Ultimately, the decision whether to dismiss an indictment lies within the discretion of the trial court, and that exercise of discretionary authority

ordinarily will not be reversed on appeal unless it appears that the exercise of discretion was mistaken. State v. Bell, 241 N.J. 552, 561 (2020) (citations omitted). "When the decision to dismiss relies on a purely legal question, however, we review that determination de novo." State v. Twiggs, 233 N.J. 513, 532 (2018). We must ensure the trial court employed the correct legal standard in dismissing the indictment. State v. Abbati, 99 N.J. 418, 436 (1985).

## III.

Count five of the indictment charged defendant with burglary in the second degree pursuant to N.J.S.A. 2C:18-2(a)(1), which establishes that "a person is guilty of burglary if, with purpose to commit an offense therein," that person enters a structure without license or privilege to do so. N.J.S.A. 2C:18-2(a)(1). "Burglary is a crime of the second degree if in the course of committing the offense, the actor purposely, knowingly, or recklessly inflicted, attempted to inflict, or threatened to inflict bodily injury on anyone." N.J.S.A. 2C:18-2(b)(1).

The Code defines "bodily injury" as "physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a). Not much is required to show bodily injury; the stinging sensation caused by a slap, for example, is adequate. State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008). Courts have also found bodily injury when someone experienced physical discomfort

9

from a kick, State in the Int. of S.B., 333 N.J. Super. 236, 243-44 (App. Div. 2000); when someone experienced pain from being hit repeatedly; State in the Int. of T.S., 413 N.J. Super. 540, 542-43 (App. Div. 2010); and when someone was put into a headlock, Stull, 403 N.J. Super. at 507.[2]  "[P]hysical discomfort, or a sensation caused by a kick during a physical confrontation, as well as pain, as that word is commonly understood, is sufficient to constitute bodily injury for purposes of a prosecution . . . ."  S.B., 333 N.J. Super. at 244.

Bodily injury is not required to sustain a conviction of burglary in the second degree because inclusive in the statute is an attempt to cause bodily injury.  "A person is guilty of an attempt to inflict bodily injury if he/she purposely commits an act which constitutes a substantial step toward the commission of the infliction of bodily injury."  Model Jury Charges (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2(b))" (rev. Mar. 14, 2016).

The State argues the second-degree burglary charge (count five) is supported by the evidence presented to the grand jury.  In support of this argument, the State asserts the unwanted touching of a stranger's feet—A.M.—

---

[2]  Some of these cases involve simple assault; however, the infliction of bodily injury elements of second-degree burglary charged in the indictment are identical to the elements required to prove simple assault.  See State v. Thomas, 187 N.J. 119, 129 (2006).

while trespassing in her private residence in the middle of the night, combined with defendant simultaneously touching his own intimate parts, satisfies the element of bodily injury defined in N.J.S.A. 2C:11-1(a).

The State claims the rational inference to be drawn from the grand jury testimony is that defendant attempted to inflict bodily injury upon A.M., which is defined as a localized or generalized unpleasant bodily sensation or combination of sensations that causes mild to severe physical discomfort and emotional distress. In the State's view, A.M.'s interpretation or understanding of what was happening at the moment is important, but it is defendant's purpose that prevails. We agree.

Given that the State receives the benefit of the reasonable inference, we conclude the evidence presented to the grand jury supports a reasonable inference defendant attempted to inflict bodily injury on A.M. The evidence shows defendant entered A.M.'s sorority house without license or permission. Soon after, he entered A.M.'s room where she was sleeping. A.M. reported to the police that she then awoke to an unknown male touching her feet while simultaneously touching his intimate parts.

These facts support the reasonable inference defendant's actions constituted a substantial step toward the commission of the infliction of bodily

11

injury.  Thus, we are satisfied the State presented at least some evidence defendant attempted and even intended to inflict bodily injury on A.M., beginning with the touching of her feet while touching his intimate parts.

Because a rational inference exists that defendant intended or attempted to injure A.M., when viewed in a light most favorable to the State, a reversal of the dismissal order and remand of the second-degree burglary charge in count five is warranted.  To the extent we have not considered any other arguments raised by the State, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Reversed and remanded for the restatement of count five of the indictment.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3913-22