**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2852-17T3

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

SHANGZHEN HUANG,

     Defendant-Respondent.

_____

Argued September 13, 2018 – Decided October 22, 2018

Before Judges Fuentes, Accurso and Moynihan
(Judge Fuentes dissenting).

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-10-1138.

Nancy A. Hulett, Assistant Prosecutor, argued the cause for appellant (Andrew C. Carey, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the briefs).

Philip Nettl argued the cause for respondent (Benedict and Altman, attorneys; Joseph J. Benedict and Philip Nettl, on the brief).

PER CURIAM

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING THE STATE' INDICTMENT CHARGING DEFENDANT WITH VEHICULAR HOMICIDE AND ASSAULT BY AUTO BECAUSE THE STATE PRESENTED A PRIMA FACIE CASE OF DEFENDANT'S RECKLESSNESS.

The State of New Jersey appeals from the dismissal of an indictment charging defendant with second-degree vehicular homicide of a child, N.J.S.A. 2C:11-5 (count one) and fourth-degree assault by auto of the child's mother, N.J.S.A. 2C:12-1(c)(1) (count two) arising from a tragic motor vehicle incident. The State argues the motion judge abused his discretion in dismissing the indictment because it presented a prima facie case that defendant was reckless when he turned his vehicle onto a four-lane highway from a commercial driveway, left the roadway and sheared two street signs before crashing into a concrete planter. A metal support from one of the signs hit a six-year old child in the head, causing trauma that led to his death. The child's mother, who was walking with him, suffered internal injuries when she was struck by a piece of sheared metal. Reviewing the motion judge's decision to dismiss the indictment for abuse of discretion, State v. Hogan, 144 N.J. 216, 229 (1996), and

A-2852-17T3

recognizing that the judge's exercise of discretion will not be disturbed on appeal unless there is a clear abuse of discretionary authority, State v. Saavedra, 222 N.J. 39, 55-56 (2015), we agree the State presented sufficient evidence to the grand jury to sustain both counts of the indictment and reverse.

The statutes pertaining to both counts of the indictment require the State to prove that defendant drove a vehicle recklessly as an element.[1] Defendant contends, and the motion judge concluded, the evidence presented to the grand jury failed to establish recklessness.[2] That evidence included a detective's testimony that the data recorder from defendant's vehicle recorded the rate of acceleration during the attempted left-turn onto the highway. Defendant's vehicle reached seventy-two percent acceleration .65 seconds prior to the impact with the planter. The rate of travel ranged from an idling speed of 3.1 miles-per-hour to a maximum speed of 37.3 miles-per-hour .15 seconds prior to impact. The maximum speed was reached after 4.65 seconds. The recorder also

---

[1] N.J.S.A. 2C:11-5(a) provides in part: "Criminal homicide constitutes reckless vehicular homicide when it is caused by driving a vehicle or vessel recklessly." N.J.S.A. 2C:12-1(c)(1) provides in part: "A person is guilty of assault by auto . . . when the person drives a vehicle . . . recklessly and causes either serious bodily injury or bodily injury to another."

[2] Defendant does not contend that the other elements of either crime were not established.

showed that defendant never applied the brakes. A report placed in evidence at the presentment contained the information from the recorder. The detective, describing the seventy-two percent acceleration rate, said defendant pressed the accelerator "about three-quarters the way to the floor." The speed limit on the highway defendant entered was forty miles-per-hour.

The State presented a video to the grand jury – also described by the detective in testimony – that showed defendant's vehicle enter the highway after observing constant traffic for approximately twenty-seven seconds. A car was in sight approaching from defendant's driver side when defendant accelerated from a standing position with his front tires on the sidewalk and rear tires on the pavement of the parking lot from which he exited. Defendant crossed all four lanes of the highway veering toward the sidewalk. He mounted the curb on the side of the road opposite the driveway from which he set out and drove with the driver-side wheels on the sidewalk and passenger-side wheels on the front yard of a structure, shearing both signs and hitting the planter. The vehicle then entered an intersection, still driving parallel to the highway. After crossing the intersecting street, hitting curb-side items along his route, he re-entered the highway and traversed all four lanes, disappearing from view without ever stopping.

A-2852-17T3

The State also presented evidence that defendant ultimately crashed his car into a tree on the same side of the highway where he began his turn. The detective also testified that the driver of a car travelling on the roadway when defendant turned told the detective that he had to switch lanes to avoid defendant's vehicle which, he said, was travelling at a high rate of speed.

The motion judge was compelled to view this evidence under the standard prescribed by our Supreme Court and determine:

> "whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 13 (2006) (citing State v. Reyes, 50 N.J. 454, 459, (1967)). A court "should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." Id. at 12 (citing Hogan, 144 N.J. at 236, State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987)).
>
> [Saavedra, 222 N.J. at 56-57.]

We determine that the evidence presented by the State and the rational inferences from that evidence, viewed in the State's favor, established the element of defendant's reckless operation of a vehicle. The record was not bereft of evidence of the necessary element, and the motion judge abused his discretion in dismissing the indictment.

A-2852-17T3

The detective testified that defendant's passenger told him that defendant enjoyed the feeling of acceleration to the point of feeling his back pushed against the seat, thus establishing defendant's familiarity with the effect of acceleration on a driver. Defendant's actions in accelerating onto the highway, his loss of control, and the degree to which he lost control – never braking, stopping only after hitting a tree – sufficiently established that he "was aware that he was operating a vehicle in such a manner or under such circumstances as to create a substantial and unjustifiable risk of death" to the child, Model Jury Charges (Criminal), "Vehicular Homicide (N.J.S.A. 2C:11-5)" (rev. Apr. 14, 2004), and "serious bodily injury" to the child's mother, Model Jury Charges (Criminal), "Assault by Auto or Vessel (N.J.S.A. 2C:12-1(c))" (approved Apr. 14, 2004); and "that the defendant consciously disregarded this risk and that the disregard of the risk was a gross deviation from the way a reasonable person would have conducted himself in the situation."[3] Model Jury Charges (Criminal),

---

[3] N.J.S.A. 2C:2-2(b)(3) defines recklessness for purposes of the Code:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the

"Vehicular Homicide (N.J.S.A. 2C:11-5)"; Model Jury Charges (Criminal), "Assault by Auto or Vessel (N.J.S.A. 2C:12-1(c))". Whether or not a jury finds the State established these elements beyond a reasonable doubt is not the question before us. We conclude only that there was some evidence before the grand jury establishing the element of recklessness to warrant denial of defendant's motion to dismiss the indictment.

In his merits brief, defendant mentions the detective's misleading testimony about the passenger's statement. He does not argue that improper testimony necessitated dismissal of the indictment; only that

> the court found that [the detective's] misleading testimony about [the passenger] was not clearly exculpatory, and therefore was not relied upon in dismissing the indictment. Rather, [d]efendant's acceleration and speed, which was essentially all the State presented "by itself, is not the type of conduct that in [the motion judge's] view would constitute recklessness."

As such, we will not consider the detective's alleged misleading testimony as a ground for dismissing the indictment. 539 Absecon Blvd., L.L.C. v. Shan

----

circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

7

Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (noting claims that have not been briefed are abandoned on appeal).

We also determine defendant's other arguments: the State's failure to appeal the dismissal of a prior indictment handed down against defendant in connection with this same incident bars this appeal under the doctrine of res judicata; and the State's failure to present any additional inculpatory evidence to the second grand jury requires the same result as the prior motion to dismiss – which were either not raised to or not addressed by the motion judge – to be without sufficient merit to warrant discussion here. R. 2:11-3(e)(2). We add only that in granting defendant's motion to dismiss a prior indictment against defendant, the judge specified that same was without prejudice and told the assistant prosecutor, "You can re-present." The State, in presenting its case to the second grand jury, addressed errors regarding the detective's "misleading, if not false response, to a grand juror's question" about defendant's medical condition, which the judge found justified dismissal of the first indictment. The State also narrowed the charges presented from five to two, and presented medical records and reports, as well as an insurance report submitted by defense counsel indicating defendant's medical complaints, to the second grand jury. The second presentment, which corrected the errors that led to the judge's first

dismissal, was not improper; the first dismissal has no bearing on the State's right to appeal the second dismissal.

Reversed and remanded for further proceedings under the indictment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2852-17T3

_____

**FUENTES, P.J.A.D., dissenting.**

A Middlesex County grand jury returned an indictment against defendant Shangzhe Huang, charging him with second degree vehicular homicide, N.J.S.A. 2C:11-5(a), and fourth degree assault by auto under N.J.S.A. 2C:12-1(c)(1). Both counts of the indictment require the State to present "some evidence establishing each element of the crime to make out a prima facie case." State v. Saavedra, 222 N.J. 39, 57 (2015) (quoting State v. Morrison, 188 N.J. 2, 12 (2006)). My colleagues in the majority have concluded that the State has satisfied this burden. I disagree and therefore respectfully dissent.

Under N.J.S.A. 2C:11-5(a), "[c]riminal homicide constitutes reckless vehicular homicide when it is caused by driving a vehicle or vessel recklessly." (Emphasis added). N.J.S.A. 2C:12-1(c)(1) defines "assault by auto" as driving a motor vehicle "recklessly" and causing "either serious bodily injury or bodily injury to another." (Emphasis added). In his decision to dismiss the indictment, the trial judge aptly noted that "the issue in this case is recklessness." The Criminal Code defines "recklessly" as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the

circumstances known to him, its disregard involves <u>a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation</u>. "Recklessness," "with recklessness" or equivalent terms have the same meaning.

[N.J.S.A. 2C:2-2(b)(3) (Emphasis added).]

The Legislature listed four examples of conduct that, if proven, a jury could rely on to infer a defendant was operating a motor vehicle recklessly:

[(1)] defendant fell asleep while driving or was driving after having been without sleep for a period in excess of 24 consecutive hours[;] . . . [(2)] defendant was driving while intoxicated in violation of [N.J.S.A.] 39:4-50[;] . . . [(3)] defendant was operating a hand-held wireless telephone while driving a motor vehicle in violation of [N.J.S.A.] 39:4-97.3[;] . . . [and (4)] defendant failed to maintain a lane in violation of [N.J.S.A.] 39:4-88.

[N.J.S.A. 2C:11-5(a).]

The Legislature cautioned, however, that "[n]othing in this section shall be construed to in any way limit the conduct or conditions that may be found to constitute driving a vehicle . . . recklessly." <u>Ibid.</u>   <u>See</u> <u>State v. Stanton</u>, 176 N.J. 75, 85 (2003) (in which the Court noted that "excessive speed, weather and lighting conditions, and known substantial safety defects in the motor vehicle or vessel" may also be considered to determine whether the defendant was driving recklessly at the time of the incident.)

2

In State v. Campfield, 213 N.J. 218 (2013), the Court reviewed the history of "recklessness" as defined in N.J.S.A. 2C:2-2(b)(3), to determine the adequacy of the factual basis the defendant provided when he pleaded guilty to second degree reckless manslaughter.[1]  Writing for the majority of the Court in Campfield, Justice Patterson specifically noted the comments made by the drafters of the Criminal Code related to the meaning and application of reckless conduct:

> As the Code uses the term, recklessness involves conscious risk creation.  It resembles acting knowingly in that a state of awareness is involved but the awareness is of risk that is of probability rather than certainty; the matter is contingent from the actor's point of view.  Whether the risk relates to the nature of the actor's conduct or to the existence of the requisite attendant circumstances or to the result that may ensue is immaterial; the concept is the same. The Code requires, however, that the risk thus consciously disregarded by the actor be substantial and unjustifiable; even substantial risks may be created without recklessness when the actor seeks to serve a proper purpose. Accordingly, to aid the ultimate determination, the Code points expressly to the factors to be weighed in judgment: <u>the nature and degree of the risk disregarded by the actor, the nature and purpose of his conduct and the circumstances known to him in acting</u>.

---

[1]  Under N.J.S.A. 2C:11-4(b), "Criminal homicide constitutes manslaughter when: (1) It is committed recklessly; or (2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation."

A-2852-17T3

[Id. at 232-33 (quoting II The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission, commentary to § 2C:2-2, at 41-42 (1971)) (emphasis added).]

Here, the State presented to the grand jury the testimony of Middlesex County Prosecutor's Office (MCPO) Detective Donald Heck; a surveillance video recording that depicts the incident; a number of photographs derived from the video record that show various stages of the wreckage created after defendant's car comes to a stop; a forty-two page document identified by the prosecutor as defendant's medical records containing the results of diagnostic tests, and a report authored by defendant's physician in which he opines that at the time of the incident, defendant was suffering from a "basilar artery migraine causing the warning symptoms of dizziness, whiting out of vision, then loss of consciousness. A possible cause of this migraine was consuming MSG at a Chinese restaurant."

The record developed before the grand jury shows the following undisputed facts. The incident occurred on January 16, 2016 on Route 27, a/k/a Raritan Avenue, located in the Borough of Highland Park, Middlesex County; it was a cloudy day and "the temperature was in the low to mid-forties" degrees Fahrenheit. The road and the air were both dry. Route 27 is a four-lane roadway,

A-2852-17T3

consisting of two northbound lanes and two southbound lanes; the posted speed limit is forty miles per hour. Defendant was twenty-one years old at the time of this incident. He was driving a 2013 Lexus GS350 sedan; there was one passenger seated in the front passenger seat. Defendant and the passenger had just finished eating at a Chinese restaurant located in a commercial strip of land adjacent to Route 27. The incident occurred as defendant exited the driveway of this commercial strip to make a lawful left turn onto Route 27.

After showing the surveillance video recording of the incident to the grand jury, the prosecutor asked Detective Heck to "describe what we've just seen . . . ."

> DETECTIVE HECK: As the Lexus leaves the parking lot, <u>he fails to negotiate a full left turn</u>. The vehicle mounts the curb on the far side of the highway. It then comes in contact with the street sign. That is one of the metal signs that - - I believe it was for a bus stop notification that there was a bus stop in the area. It sheared that sign at the base. There was a second metal sign that was also sheared, as well as a concrete planter that was used as a garbage holder.
>
> After he made contact with all three . . . of those objects, [the mother] and her child came down from Columbia and were right at the intersection on . . . the sidewalk there, where one of the street sign support posts made contact with [the mother] in her right side of her abdomen. Unfortunately the street sign post also made contact with the child's head causing massive head trauma to the child. [Defendant's] vehicle then crosses

back over the four lanes of Route 27, comes down to a
. . . residence on the opposite side of the highway and
comes to rest after he struck a tree.

[Emphasis added).]

It is also undisputed that defendant was not under the influence of alcohol, narcotics, or any other substance or medication that would impair his judgment or ability to safely operate the car. He was not sleep-deprived or using a cellular phone at the time he "fail[ed] to negotiate" a lawful left turn onto Route 27. Detective Heck also acknowledged that "there were no notable deficiencies in the operating condition of the vehicle." Detective Heck testified that defendant's car "was equipped with a crash data recorder," commonly referred to as a "black box." Detective Heck retrieved and reviewed the information recorded by this device. He testified that the data showed defendant's maximum speed was "37.3 miles per hour at .15 seconds prior to impact." Stated differently, when defendant first struck the metal bus notification signs, he was traveling below the forty miles per hour speed limit allowed at Route 27.

This is the second indictment the trial judge has dismissed in this matter. On May 15, 2017, the judge granted defendant's motion, and dismissed without prejudice the first indictment. In granting the first motion to dismiss the indictment, the judge found "the acceleration speed of defendant's vehicle in

merging into traffic, in and of itself, was not the type of conduct that necessarily reveals a conscious disregard for risk to others." The judge noted that Detective Heck testified

> [that] as defendant made a left turn, he accelerated into traffic from an idling speed of 3.1 miles per hour to a maximum speed of 37.3 miles per hour within 4.65 seconds. The detective stated that defendant's acceleration reached 72 percent of the full engine throttle and that defendant never hit the brakes.

The only material difference between the State's presentation to the first grand jury and the presentation to the second grand jury concerns statements the passenger allegedly made to Detective Heck, when Heck questioned him long after the accident. The following questions by the prosecutor underscore the importance of this evidence.

> Q. [The passenger] indicated to you that . . . he's known [defendant] for a while; correct?
>
> A. Yes.
>
> Q. Okay, and he's been in the car before when [defendant] was driving; right?
>
> A. Yes.
>
> Q. Okay, and did he tell you anything about how he drives?
>
> A. He did; yes.

Q. Okay, he in fact enjoyed - - told you that . . . [defendant] enjoys the feeling of acceleration; correct?

A. Yes.

Q. Okay, do you recall anything else that he said generally about that?

A. He says [defendant] enjoys the feeling of the rush of getting thrown back into the seat when he steps on the gas pedal from a start.

The trial judge took issue with this testimony from Detective Heck based on a number of grounds. The judge first noted the passenger had only told Detective Heck that "defendant stomped on the gas pedal while he was in the vehicle on one of three occasions." The judge thus found Detective Heck's testimony misleading because he never asked the passenger to clarify the circumstances under which defendant allegedly drove in this fashion nor ascertained with greater accuracy how frequently defendant engaged in this manner of acceleration. Finally, the State did not disclose to the second grand jury that the passenger "initially stated the defendant was not driving fast out of the restaurant parking lot."

The Supreme Court recently reaffirmed the standard of review a court must apply to decide a motion to dismiss an indictment.

> On a motion to dismiss a criminal indictment, a court "view[s] the evidence and the rational inferences drawn

from that evidence in the light most favorable to the State." A criminal indictment is proper if the State presented the grand jury with at least "'some evidence' as to each element of a prima facie case." A trial court's denial [or grant] of a motion to dismiss an indictment is reviewed for abuse of discretion.

[State v. Twiggs, 233 N.J. 513, 544 (2018) (internal citations omitted).]

Here, the trial judge carefully reviewed the entire record, applied the relevant legal standard, and came to the conclusion that the State failed to establish defendant drove his car on January 16, 2016 in a manner that shows a conscious disregard of a known risk. I conclude the trial judge's decision is supported by the record and constitutes a proper exercise of his discretionary authority under the relevant legal standard. The State did not present sufficient evidence to establish that the manner defendant drove his car as he exited the parking lot to turn left onto Route 27 amounted to a gross deviation from the standard of conduct that a reasonable person would observe in this situation. Defendant's failure to negotiate this turn may amount to a finding of negligence in a civil trial, but it does not ipso facto satisfy the recklessness standard defined in N.J.S.A. 2C:2-2(b)(3).

Even when viewed through the prism of the indulgent standard our Supreme Court reaffirmed in Twiggs, this record is not legally sufficient to

9

expose defendant to criminal prosecution. In his description of what occurred, Detective Heck accurately characterized defendant's conduct as a "[failure] to negotiate" a left turn. Defendant's car veered out of control and crashed into one of the metal "bus stop notification" signs. The force of the collision sheared the sign at the base. The car then crashed into a garbage container encased in concrete; triggering an unforeseeable, catastrophic chain of events that caused pieces of debris to behave like deadly shrapnel. The vehicle then crossed back over Route 27 and, in the words of Detective Heck, "[came] to rest after" it struck a tree. The video recording shows the entire incident was over in a matter of seconds.

Defendant was not cited for violating the rules of the road codified in Title 39. The State did not present any evidence from which a reasonable member of this grand jury could have rationally inferred defendant drove his car in a reckless manner. This was a tragic accident, not a criminal act.

I am also deeply troubled by the State's decision to present the passenger's statements describing defendant's alleged predilection for acceleration. This testimony by Detective Heck was highly prejudicial and would have been palpably inadmissible in a future trial under N.J.R.E. 404(b) because it was clearly offered by the State "to prove the disposition of a person in order to show

that such person acted in conformity therewith." I acknowledge that this statement is not per se inadmissible in the context of a grand jury proceeding. See State v. Scherzer, 301 N.J. Super. 363, 428 (App. Div. 1997). However, the presentation of this highly prejudicial, facially incompetent evidence had the capacity to substantially influence the grand jury's decision to indict defendant and created "'grave doubt' that the determination ultimately reached was arrived at fairly. . . ." State v. Engel, 249 N.J. Super. 336, 360 (App. Div. 1991). This tactic is also patently inconsistent with basic principles of fundamental fairness.[2]

Writing for a unanimous Court in State v. Hogan, 144 N.J. 216, 236 (1996), Justice Stein emphasized that "[o]ur State Constitution envisions a grand jury that protects persons who are victims of personal animus, partisanship, or inappropriate zeal on the part of a prosecutor." The manner this case was presented to the grand jury appears driven by "inappropriate zeal on the part of the prosecutor." Ibid. Viewed in the light most favorable to the State, this tragic occurrence bespeaks of civil negligence, not criminal recklessness. I would

_____

[2] As Justice Pashman explained in State v. Sugar, 84 N.J. 1, 15 (1980), fundamental fairness relates to "our concern for judicial integrity," which "extends even to its mere appearance." Thus, "we have employed the notion of fundamental fairness to strike down official action that does not itself violate due process of law." Ibid. Given a clear need to redress a wrong, the doctrine of "fundamental fairness on occasion requires that a court prohibit conduct that does not transgress the Constitution." Ibid.

affirm substantially for the reasons expressed by the trial judge in his thorough and well-reasoned oral opinion delivered from the bench on January 19, 2018.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2852-17T3